DORANCE D. BOLTON AND HELEN A. BOLTON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7741–79.     Filed July 27, 1981.

---

[7]Also see *Hall v. Commissioner*, T.C. Memo. 1979–342.

*Charles S. Wulke*, for the petitioners.
*Michael R. Morris*, for the respondent.

OPINION

RAUM, *Judge*: The Commissioner determined an $859 deficiency in petitioners' 1976 income tax. After concessions, the only remaining issue is the amount of deductions allowable in accordance with section 280A, I.R.C. 1954, with respect to maintenance expenses, exclusive of interest and property taxes, on petitioners' Palm Springs vacation home. The answer depends upon the amount of interest and property taxes allocable to the rental use of the property under section 280(A)(c)(5)(B). The case was submitted on the basis of a stipulation of facts.

At the time of the filing of their petition herein, petitioners were residents of Palm Desert, Calif.

During 1976, petitioners owned a rental unit (hereinafter sometimes referred to as the unit or the property) in Palm Springs, Calif. This unit was acquired by petitioners in 1974 for rental use, personal use, and appreciation. The property was sold at a substantial profit in 1977.

The parties have stipulated that in 1976, the unit was "rented out" for 91 days, used personally by petitioners for 30 days, and was unoccupied for 244 days.[1] Petitioners did not actively advertise the unit, solicit potential tenants, or list the property with real estate brokers during the period that it was unoccupied in 1976. The unit was not held out for rent during the 244 days it was unoccupied in 1976 because of the following factors: (a) It was either rented or used personally by the petitioners during the period which petitioner Dorance D. Bolton regarded as the prime rental season for property in Palm Springs, Calif., and (b) he was reluctant to place the unit with a commercial leasing agency (commonly referred to as a rental pool) because he was apprehensive over losing control with respect to the quality of potential tenants.

The petitioners made interest payments in the amount of

---

[1]Since 1976 was a leap year, it in fact contained 366 days, but the stipulation fails to specify the use of the property for the additional day.

$2,854 and paid property taxes in the amount of $621 with respect to the unit during 1976.

On their 1976 joint income tax return, petitioners reported the receipt of $2,700 in gross rents from the unit. This amount was fully offset by reported expenses for the property, exclusive of depreciation, and their return accordingly reflected no net income therefrom.

In computing their rental income from the property on Schedule E, the petitioners deducted 25 percent of both the interest ($713) and the property taxes ($155) paid with respect to the property from the gross rents which they received from the property. In determining the amounts of interest and taxes allocable to the rental use, as required by section 280A(c)(5)(B), the petitioners utilized a fraction in which the numerator was the number of days in 1976 that the property was rented (91) and the denominator was the number of days in a year (365). That fraction was approximately equal to the rounded figure of 25 percent used by petitioners.[2] The net effect of this computation was to permit the deduction of repair and maintenance expenses of $1,832, after application of section 280A(e)(1).[3] The petitioners deducted the balance of the interest payments ($2,141) and property taxes ($466) as itemized deductions.

The Commissioner determined that the property was used for rental purposes 75 percent of the total days it was used during the year, i.e., 91 out of a total of 121 days of occupancy. The Commissioner therefore allocated 75 percent of the interest and taxes, $2,140 and $466, respectively, to the rental use of the Palm Springs property, in applying section 280A(c)(5)(B), and allowed the remaining 25-percent of interest and taxes as itemized deductions. These adjustments in the allocation of interest and taxes effectively reduced the total

---

[2]Throughout their presentations, the parties have used rounded percentage figures as well as the nearest dollar figures in applying such percentages. This opinion follows the same practice.

[3]The total amount of maintenance and repair expenses (exclusive of interest and taxes as well as depreciation) reported on petitioners' return was $2,693. However, upon applying the formula of sec. 280A(e)(1), I.R.C. 1954, the maximum amount deductible was $2,020, which was further limited by sec. 280A(c)(5) to $1,832 pursuant to petitioners' method of allocating $713 interest and $155 property taxes to the rental use. For further discussion of these provisions and computations, see *infra*, pp. 109–110.

amount of deductions for repairs, maintenance, and other expenses[4] which could be taken against the rental income of the property under section 280A, I.R.C. 1954, with the net effect of a $1,739 increase in petitioners' 1976 taxable income.

Section 280A,[5] originally enacted as part of the Tax Reform

---

[4] Repairs, maintenance, and other expenses are herein sometimes referred to in the aggregate simply as maintenance expenses.

[5] SEC. 280A. DISALLOWANCE OF CERTAIN EXPENSES IN CONNECTION WITH BUSINESS USE OF HOME, RENTAL OF VACATION HOMES, ETC.

(a) GENERAL RULE.—Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * * no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

(b) EXCEPTION FOR INTEREST, TAXES, CASUALTY LOSSES, ETC.—Subsection (a) shall not apply to any deduction allowable to the taxpayer without regard to its connection with his trade or business (or with his income-producing activity).

(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.

* * * * * * *

(3) RENTAL USE.—Subsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e)).

* * * * * * *

(5) LIMITATION ON DEDUCTIONS.—In the case of a use * * * described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of—

(A) the gross income derived from such use for the taxable year, over

(B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.

(d) USE AS RESIDENCE.—

(1) IN GENERAL.—For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of—

(A) 14 days, or

(B) 10 percent of the number of days during such year for which such unit is rented at a fair rental.

For purposes of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes.

* * * * * * *

(e) EXPENSES ATTRIBUTABLE TO RENTAL.—

(1) IN GENERAL.—In any case where a taxpayer who is an individual or an electing small business corporation uses a dwelling unit for personal purposes on any day during the taxable year (whether or not he is treated under this section as using such unit as a residence), the amount deductible under this chapter with respect to expenses attributable to the rental of the unit * * * for the taxable year shall not exceed an amount which bears the same relationship to such expenses as the number of days during each year that the unit * * * is rented at a fair rental bears to the total number of days during such year that the unit * * * is used.

(2) EXCEPTION FOR DEDUCTIONS OTHERWISE ALLOWABLE.— This subsection shall not apply with respect to deductions which would be allowable under this chapter for the taxable

Act of 1976 (Pub. L. 94–455, sec. 601, 90 Stat. 1520), is a response to congressional concern that rental of property used by the taxpayer as a residence afforded the taxpayer unwarranted opportunities to obtain deductions for expenses of a personal nature. In the case of vacation homes, the relevant congressional committee reports express the view that rental activities were frequently undertaken merely to defray the cost of maintaining a vacation home for the taxpayer's personal use, rather than for the purpose of making a profit. Although section 183, I.R.C. 1954, could generally have been expected to apply to such rentals of vacation homes as activities not engaged in for profit, thereby limiting deductions with respect to maintenance of a vacation home to the amount of gross income received from its rental, Congress was concerned that section 183 and the related regulations did not provide sufficiently specific rules as to the degree of personal use of a vacation home which would result in its rental being classified as an activity not engaged in for profit. H. Rept. 94–1515, 94th Cong., 2d Sess. 436 (1976); S. Rept. 94–938, 94th Cong., 2d Sess. 150–152 (1976); H. Rept. 94–658, 94th Cong., 1st Sess. 162–164 (1975). Section 280A was thus intended to provide "definitive rules * * * to specify the extent to which personal use [of a vacation home] would result in the disallowance of certain deductions in excess of gross income" from the property. S. Rept. 94–938, *supra* at 152; H. Rept. 94–658, *supra* at 164.

Section 280A(a) states the general rule that, "Except as otherwise provided" in that section, no deduction is allowable

---

year whether or not such unit (or portion thereof) was rented.

(f) DEFINITIONS AND SPECIAL RULES.—

(1) DWELLING UNIT DEFINED.—For purposes of this section—

(A) IN GENERAL.—The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit.

* * * * * * *

(3) COORDINATION WITH SECTION 183.—If subsection (a) applies with respect to any dwelling unit * * * for the taxable year—

(A) section 183 (relating to activities not engaged in for profit) shall not apply to such unit * * * for such year, but

(B) such year shall be taken into account as a taxable year for purposes of applying subsection (d) of section 183 (relating to 5-year presumption).

"with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."[6] However, subsection (b) does "otherwise provide" to exclude such items as interest and taxes from subsection (a), and subsection (c)(3) excludes from subsection (a) any item which is attributable to the rental of the unit. But the amount of deduction permitted under subsection (c)(3) is explicitly required to be determined in the first instance by applying the provisions of subsection (e), and deduction of the amount thus determined is further limited by the provisions of subsection (c)(5).

In attempting to thread our way through the tortuous path of these exasperatingly convoluted provisions, we must first make the preliminary computation under subsection (e). That subsection is captioned "Expenses Attributable to Rental," and paragraph (1) thereof states that the amount deductible shall not exceed an amount which bears the same relationship to the rental expenses as the number of days the unit is rented at a fair rental bears to the total number of days during the year that the unit is used.[7] In this case, that relationship is represented by the fraction 91/121 which the parties have treated as being equal to the rounded figure of 75 percent. However, paragraph (2) of subsection (e) provides in substance that subsection (e) shall not apply to deductions which would be allowable in any event (e.g., interest and taxes) regardless of whether the unit were rented. Accordingly, applying the 75-percent figure to the total expenses of the rental property (other than interest and taxes) as reported by petitioners ($2,693)[8] we arrive at a tentative deduction of $2,020 under sections 280A(e)(1) and 280A(c)(3).

---

[6]Residential use is defined in subsec. (d)(1) as use of the dwelling for "personal purposes" in excess of the greater of 14 days or 10 percent of the days the unit is rented at a fair price. Since petitioners personally used the property 30 days and it was rented a total of 91 days in 1976, the conditions of subsec. (d)(1) have thus been satisfied.

[7]The congressional committee reports note that when there is both personal and business use of property, maintenance, insurance, utilities expense, and depreciation must be "allocated on a reasonable and consistently applied basis." S. Rept. 94–938, 94th Cong., 2d Sess. 151 (1976); H. Rept. 94–658, 94th Cong., 1st Sess. 163–164 (1975). Accordingly, sec. 280A(e) limits the expenses allocable to rental activities "to an amount determined on the basis of the ratio of time that the home is actually rented, to the total time the vacation home is used during the taxable year for all purposes (i.e., rental, business, and personal activities)." H. Rept. 94–658, *supra* at 164; see S. Rept. 94–938, *supra* at 152.

[8]This amount does not include a further reported item of depreciation in the amount of $3,839 which both parties have treated as not affecting the outcome of this case.

We therefore turn at once to the final and pivotal limiting terms of section 280A(c)(5), which provides:

> (5) LIMITATION ON DEDUCTIONS.—In the case of a use * * * described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of—
>
>> (A) the gross income derived from such use for the taxable year, over
>>
>> (B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.

The amount of the subparagraph (A) gross income ($2,700) is undisputed. However, the critical point of difference between the parties is the determination under subparagraph (B) of the amount of deductions (interest and property taxes) allowable in any event which are "allocable" to the rental use.

As noted above (p. 106) petitioners allocated $713 interest and $155 property taxes, or a total of $868, to rental use. Such allocation represented 25 percent of the total property taxes ($2,854) and interest ($621) paid in 1976 in respect of the unit; and the 25-percent figure was based upon the number of days that the unit was rented (91) in relation to the total number of days in a year (365). The $868 allocation of interest and taxes was thus treated by petitioners as the subsection (c)(5)(B) deductions "allocable" to rental use, and after subtracting such amount from the $2,700 gross rentals, petitioners arrived at a net figure of $1,832 of deductible expenses attributable to the rental unit.[9]

The Commissioner, on the other hand, computed the subsection (c)(5)(B) subtrahend as being equal to 75 percent of the interest and taxes (i.e., 75 percent of $2,854 and $621, respectively) or a total of $2,606. The Commissioner's computation was predicated upon the assumption that the amount of interest and property taxes "allocable" to the rental use must be based upon the ratio of the number of days that the property was used for rental purposes (91) to the total number of days that the property was used (121)—in short, the same

---

[9]The net result was the disallowance of deductions of $188 of subsec. (e)(1) allocable expenses ($2,020 minus $1,832) apart from depreciation, as well as the disallowance of all of the $3,839 claimed depreciation deductions. See note 3 *supra*.

computation formula that is required by subsection (e)(1). The consequence of the Commissioner's determination was that by treating $2,606 as the amount called for by subsection (c)(5)(B), petitioners were permitted to take only $94 of deductions in respect of maintenance expenses ($2,700 minus $2,606). We think that this extraordinary result was wrong, and we uphold the result urged by petitioners, notwithstanding that we do not necessarily agree with all of their reasoning.

Interest is an expense that accrues ratably over the year and property taxes may likewise be regarded as being applicable to the entire year. The ordinary and normal method of determining what portion of interest is allocable to any part of a year would be to multiply the annual interest by a fraction, the numerator of which is the number of days in the period involved and the denominator is the number of days in the year. The same process would be employed in respect of real estate taxes. It was this method that petitioner used in applying the limiting provisions of section 280A(c)(5)(B).

We think that petitioner's position is reasonable and correctly gives effect to the critical words of subsection (c)(5)(B): "deductions *allocable* to [rental] use which [like interest and property taxes] are allowable * * * for the taxable year whether or not such unit * * * was so used." (Emphasis supplied.) A ratable portion of the annual charges for interest and taxes based on the period of rental use would certainly be the amount that is "allocable" to such use.

In taking a different view, the Government utilizes the identical computation specified in section 280A(e)(1), in which it compresses the annual interest and property taxes into the 121-day period that the property was used. But while that computation may serve a useful purpose in respect of the otherwise nondeductible maintenance expenses that are ordinarily associated with occupancy or use of the property, entirely different considerations are involved in respect of items such as interest and taxes that are spread over the entire year and are deductible in any event. Indeed, section 280A(e)(2) makes this abundantly plain by stating explicitly as follows:

(2) EXCEPTION FOR DEDUCTIONS OTHERWISE ALLOWABLE.—This subsection shall not apply with respect to deductions which would be allowable under

this chapter for the taxable year whether or not such unit (or portion thereof) was rented.

Congress was thus clearly aware of the part played by such deductions as interest and taxes, and deliberately made the subsection (e)(1) computation inapplicable to them. In the circumstances, we think that if it had intended the word "allocable" in subsection (c)(5)(B) (which did relate to deductions like interest and taxes) to be construed in accordance with the subsection (e)(1) formula, it would have explicitly so stated. The bizarre result of the Government's computation whereby only $94 in maintenance expense deductions is allowed against the $2,700 rentals should be enough to give one pause when it is kept in mind that petitioners incurred $2,020 in such deductible expenses (exclusive of depreciation) applicable to the rental use of the property. The legislative objective of frustrating a taxpayer's attempt to "shelter" unrelated income from tax by deductions connected with a vacation home does not require any such extreme application of the statutory provisions. The result which the Government seeks here is overkill with a vengeance. We cannot believe that Congress intended any such extreme result, particularly when that result depends not only upon an unnatural reading of the language of subsection (c)(5)(B), but also fails to give proper consideration to the fact that interest and property taxes are deductible in full regardless of whether the property is rented for even a single day.

We are fully aware that the Court recently in a memorandum opinion applied the subsection (e)(1) formula to subsection (c)(5)(B). *McKinney v. Commissioner*, a Memorandum Opinion of this Court (41 T.C.M. 1272, 50 P-H Memo T.C. par. 81,181 (1981)). However, there was no indication in the opinion that the Court took subsection (e)(2) into account. And the issue as to the allocation method to be used under section 280A(c)(5)(B) was neither raised nor briefed by the parties. The Court thus did not have the benefit of the parties' analysis of the problem, particularly the possible impact that subsection (e)(2) might have upon an interpretation of subsection (c)(5)(B) that sought to incorporate the formula articulated in subsection (e)(1). Moreover, not only was that issue of minor significance in relation to other issues in *McKinney*, but the case was atypical as to that issue in that no interest was paid in respect of the

taxpayers' vacation home and the only item requiring an allocation under subsection (c)(5)(B) was a comparatively modest amount of property taxes. Accordingly, regardless of whether such allocation was made by use of the subsection (e)(1) formula or by spreading the taxes over the entire year, the great bulk of the much greater maintenance expenses remained deductible within the limitations of subsection (c)(5), and the resolution of the issue had only a minor effect upon the ultimate amount involved. It is thus quite understandable that the unsoundness of applying the subsection (e)(1) formula to subsection (c)(5)(B) could easily have been overlooked in the context of that case and the manner in which it was presented to the Court.

*Decision will be entered under Rule 155.*