ALVIN F. BAKER and NANCY B. BAKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Baker v. Commissioner
Docket No. 4904-80.
United States Tax Court
T.C. Memo 1983-61; 1983 Tax Ct. Memo LEXIS 728; 45 T.C.M. (CCH) 635; T.C.M. (RIA) 83061; February 1, 1983. Philip D. Humphreys, for petitioners. Ray K. Kamilkawa, for respondent. WILBUR
MEMORANDUM FINDINGS OF FACTS AND OPINION WILBUR, Judge: Respondent determined a deficiency of $1,505 in petitioners' 1976 Federal income tax. The issues for our determination are: (1) whether Mr. Baker's use of a dwelling unit in connection with his performance of services for a charitable organization constitutes use for personal purposes within the meaning of section 280A [1] and, if not; (2) whether petitioners' *730 rental of the dwelling unit was an activity engaged in for profit. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Alvin F. and Nancy B. Baker, raisded in Livermore, California, at the time the petition herein was filed. In 1966, petitioners, just out of school, moved to California. After renting a cabin in the Mt. Reba Bear Valley ski area and talking to persons there about the development of the area, petitioners became interested in purchasing a piece of land near Mt. Reba. They wanted a lot with a view and one which bordered on a state or national forest. Sometime later petitioners were contacted by a realtor who had such a piece of property and, in November 1968, they purchased approximately 1.8 acres for $12,950 (the Arnold property or the property). The property is located on Mt. Reba at 583 Choctaw Drive, Arnold, California. In 1971, plans were drawn up for the construction of a house on the land and petitioners contracted to have a "lockable shell" built. The *731 shell had plumbing and rough wiring but was not finished on the inside. After the shell was constructed, Mr. Baker spent weekends finishing the inside of the house. Construction was completed in 1975. The house is a two-level structure on top of a garage, with a deck in front and along one side. It has two baths and four bedrooms, occupies 1,900 square feet, and cost $29,244. The house is completely furnished with beds, couches, chairs, a kitchen table, wall-to-wall carpeting, a television, linens, and cooking and eating utensils. The property was first available for rent in 1975. Except for a few months in that first year, petitioners did not hire anyone to help them rent the Arnold property. From 1976 through 1980, petitioners advertised the property for rent in newspapers and realtors' newsletters serving Livermore and surrounding areas. Pictures of and information on the property were distributed by Mrs. Baker to realtors in Livermore for listing in vacation-rental books. The property was listed at the housing department of Lawrence Livermore Laboratory, Livermore's largest employer, and was advertised at the place of business of each petitioner and at the facility *732 across the street from where Mr. Baker worked.Petitioners also used word-of-mouth to advertise the property. The number of days on which the property was rented, the income therefrom, and expenses incurred in connection with the property are as follows: 1975
1976
1977
1978
1979
1980
Days Rented
57 49 88 77 111 88 Income
* $1,183 $1,320 $2,116 $2,598 $3,680 $2,575 Cash Expenses
3,732 3,726 4,222 2,938 3,482 4,774 Depreciation
1,458  ** 1,458 1,458 1,019 1,458 1,458 Net Profit or
* (4,007)
(3,864)
(3,564)
(1,359)
(1,260)
(3,657)
Loss
The expenses for 1976, the year in issue, consist of $63 for advertising the property for rental, interest of $1,362, taxes of $923, depreciation of $1,458, and other expenses *733 of $1,378. A fair rental was charged on each of the 49 days that the property was rented in 1976; this price was established after talking to other landlords in the Mt. Reba area. The property was rented primarily in May, July, and August. In 1976, Mr. Baker was employed full-time as an engineer and Mrs. Baker was employed part-time. Mrs. Baker's wages were $10,196.03; Mr. Baker's wages were $34,903.40. Petitioners had no other substantial sources of income. In addition to the Arnold property, petitioners have operated six other rental properties between the years 1974 and 1980. The operation of these properties has for the most part been at a loss. [2] One of these rental properties, the Kennedy property, was purchased by petitioners in 1966 for approximately $19,000. Petitioners made no substantial improvements to the property. In 1978, a value of approximately $59,000 was placed on the Kennedy property when petitioners exchanged it for another property. Petitioners maintain a separate checking account for their rental properties and maintain a file of the cost of, improvements to, and expenses relating *734 to each property. They also hired a service to open the Arnold property for persons renting it and to check and close the property at the end of each rental. During June 1981, three parcels of improved real property located approximately 1 mile from the Arnold property were sold for $84,250, $86,000, and $86,000. These three lots were down-facing, were between one-half and one acre in size, and the houses had no garage. Petitioners' property, on the other hand, is an up-facing lot, [3] 1.8 acres, and has a garage. The building materials of the three houses which were sold were comparable to those used in petitioners' house.Petitioners have made no effort to sell the Arnold property.While they believe there is a small possibility of a positive cash flow from the rental of the property, they purchased it primarily with a view towards its appreciation. On 5 days in 1976, Mr. Baker performed maintenance work on the property on a substantially full-time basis. On 7 days, Mr. Baker used the property while volunteering services for the Stockton Ski Patrol, Inc. (the ski patrol), a subsidiary of National *735 Ski Patrol, Inc. On 11 other days, Mr. Baker, again while volunteering services for the ski patrol, used the property along with Mrs. Baker and their two daughters. Mrs. Baker and petitioners' daughters did not volunteer their services to the ski patrol nor did they perform maintenance work on the property during these 11 days.On the days that Mr. Baker used the property while volunteering for the ski patrol, he would go to the ski area between 7:30 and 8:30 a.m. and would volunteer his services until the slopes were cleared in the evening. Mr. Baker would then return to the property to eat and spend the night. [4]
National Ski Patrol, Inc. and Stockton Ski Patrol, Inc. are organizations described in section 501(c)(3) to which contributions are deductible under section 170. [5] Mr. Baker provides services for the ski patrol as a volunteer without any remuneration or reimbursement for out-of-pocket costs. *736 On their 1976 return, petitioners deducted the full amount of 1976 expenses attributable to the Arnold property, i.e., $5,184. OPINION Section 280A limits otherwise allowable deductions "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." [6] A dwelling unit is used as a residence if it is used by the taxpayer for personal purposes in excess of 14 days during the taxable year.[7] We must determine the number of days on which petitioners used the Arnold property for personal purposes in 1976. *737 The parties agree that the 11 days on which petitioners and their family used the property constitutes use for personal purposes. They disagree, however, on whether the 7 days on which Mr. Baker alone used the property in connection with his ski-patrolling activities also constitutes personal use. Petitioners contend that Mr. Baker's use of the property on these 7 days was for charitable rather than personal purposes. Respondent argues that Mr. Baker's use of the property was for personal purposes despite the fact that during the day he volunteered his services to a charitable organization. We agree with respondent. Neither section 280A, the regulations thereunder, nor the legislative history of that section provides an explicit answer as to whether Mr. Baker's use of the property constitutes use for personal purposes.Petitioners argue that, because the out-of-pocket expenses incurred by Mr. Baker in connection with his ski-patrolling activities are deductible, [8] his use of the property on the 7 days in question was not personal use. Contrary to petitioners' assertions, however, the fact that an expense may be deductible does not remove it from the category of personal expenses. *738 Section 262 provides: Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. [Emphasis added.] If all deductible expenses were per se nonpersonal, the emphasized language in section 262 would be meaningless. Thus certain expenses, such as charitable contributions, are deductible notwithstanding the fact that they are of a personal nature. [9]
*739 Accordingly, we do not agree with petitioners that sections 170 and 262 provide support for the proposition that Mr. Baker did not use the property for personal purposes. Nor do we agree with petitioners that the phrase "personal purposes" as used in section 280A(d) is limited to uses involving pleasure or recreation. Section 280A was enacted to obviate the need to make subjective determinations regarding a taxpayer's motive and primary purpose in owning a vacation home. H. Rept. No. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 856; S. Rept. No. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 190. In an attempt to accomplish its objective, Congess provided limitations on deductions when a dwelling unit is used for personal purposes in excess of a specified number of days. See section 280A(a) and (d).We find no support for petitioners' contention that in interpreting "use for personal purposes" we should inquire into whether the taxpayer enjoyed himself while staying in the unit. Accordingly, we hold that Mr. Baker's use of the Arnold property as a place to eat and sleep constitutes use for personal purposes within the meaning of section 280A(d). [10]
*740 Having decided that section 280A applies because petitioners used the Arnold property as a residence we must determine the amount of interest and taxes which are allocable to the rental use of the property. [11] Respondent argues that interest and taxes should be allocated based on the number of days the property was rented divided by the total number of days the property was actually used. In Bolton v. Commissioner,77 T.C. 104 (1981), affd.     F.2d     (9th Cir. Dec. 2, 1982), we rejected respondent's position and held that the interest and taxes attributable to rental use is determined according to the number of days the property was rented divided by the number of days in the year. Our opinion in Bolton controls the instant case. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
*. Petitioners submitted into evidence a schedule showing rental income of $1,283 and a loss of $3,907 for 1975. The parties have stipulated, however, that the income was $1,183 and the net loss was $4,007.
** Although petitioners' schedule lists $1,456 as depreciation for 1976, the parties have stipulated that the depreciation was $1,458.↩
2. In 1979, one of the properties was operated at $54 gain.↩
3. Apparently, an up-facing lot has a better view than a down-facing lot.↩
4. In years subsequent to 1976, petitioner used the property in connection with ski patrolling activities either alone or with his family for 25 days in 1977, 28 days in 1978, 4 days in 1979, and 22 days in 1980.↩
5. The purposes of the ski patrol include the promotion of public safety and skiing through the dissemination of information on safety and the formation of a volunteer metropolitan patrol consisting of competent skiers who are trained in preventing accidents and rendering speedy assistance to persons sustaining accidents.Specific activities including the rendering of first aid to injured persons, performing rescues of persons who have wandered outside the regular skiing area, and the giving of instructions to skiers with respect to adjustments to ski equipment and safety practices, and policing the area for skiers out of control or skiing in a manner hazardous to themselves as well as to other skiers.↩
6. Sec. 280A(a) provides: (a) GENERAL RULE.--Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence. ↩
7. Sec. 280A(d)(1) provides: (d) USE AS RESIDENCE.-- (1) IN GENERAL.--For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of-- (A) 14 days, or (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental.
Fourteen days is greater than 10 percent of the number of days (49) for which the property was rented in 1976.↩
8. Respondent has stipulated that Mr. Baker's out-of-pocket expenditures are deductible. See McCollum v. Commissioner,T.C. Memo. 1978-435; sec. 1.170A-1(g), Income Tax Regs.↩
9. See sec. 1.262-1(c), Income Tax Regs., which provides: Certain items of a personal, living, or family nature are deductible to the extent expressly provided under the following sections, and the regulations under those sections: (5) Section 170 (charitable, etc., contributions and gifts). See also H. Rept. No. 94-658 (1975), 1976-3 C.B. (Vol. 2) 695, 855; S. Rept. No. 94-938 (1976), 1976-3 C.B. (Vol. 3) 49, 189 ("Deductions that are expressly allowable, even though they are attributable to personal use,↩ include items of interest, certain taxes, and casualty losses." Emphasis added.)
10. Because of our conclusion that petitioners used the Arnold property as a residence within the meaning of sec. 280A we need not consider the parties' argument in respect of sec. 183.↩
11. Interest and taxes are deductible notwithstanding the fact that the property was used as a residence. See sec. 280A(b) and (c)(5)(B). For a guide through the "tortuous path of [the] exasperatingly convoluted provisions" of sec. 280A see Bolton v. Commissioner,77 T.C. 104, 108-110 (1981), affd.     F.2d     (9th Cir. Dec. 2, 1982↩).