T.C. Memo. 2014-236

UNITED STATES TAX COURT

MARK A. VAN MALSSEN AND PATRICIA D. KILEY, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11212-12.                    Filed November 20, 2014.

<u>Flora Leigh T. Hezel</u> and <u>Robert H. Johnson</u>, for petitioners.

<u>Thomas R. Mackinson</u> and <u>Matthew S. Reddington</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  Respondent determined deficiencies with respect to

petitioners' Federal income tax for tax years 2008, 2009, and 2010 as follows:

| [*2] | Year | Deficiency |
|------|------|------------|
|      | 2008 | $19,198    |
|      | 2009 | 14,543     |
|      | 2010 | 11,626     |

Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The issues for consideration are (1) whether petitioners' deductions for rental real estate losses for 2008 and 2010 are limited by section 280A; and if not whether those deductions are limited by the passive loss rules of section 469, and (2) to what extent petitioners' rental real estate loss deduction for 2009 is limited by section 280A.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Virginia when they filed the petition.

Petitioner husband was an engineer and retired from Phillip Morris in March 2008. From March 2008 through December 2012 petitioner husband spent more time performing personal services in the real estate trade or business than he spent performing personal services in any other trade or business. Petitioner wife

**[*3]** was employed as a nurse anesthetist at all times during the taxable years at issue.

Vacation Condominium

In March 2007 petitioners purchased a vacation condominium in South Carolina. Petitioners used the condominium for 81 days in 2008, 59 days in 2009, and 45 days in 2010. Petitioner husband's brother used the condominium for seven days in 2008. Petitioners also rented the condominium to vacationers. The average rental period of the condominium was approximately 10 days in 2008, 8 days in 2009, and 7 days in 2010. Petitioners contracted with Dieter Co., a rental management company, to provide sales and management services, including booking rentals and cleaning and maintaining the unit between rentals. Dieter Co. estimates that it spent 57 hours in 2008, 63 hours in 2009, and 69 hours in 2010 performing services with respect to petitioners' condominium.

Petitioners determined at the time of purchase that the condominium needed remodeling and repairs. Throughout the tax years at issue, petitioner husband made the 350-mile trip from their home to the condominium several times to remodel and repair the condominium.

In 2008 petitioner husband took 12 trips to the condominium where he performed repairs and maintenance. During the first trip he was there for 14 days

[*4] and worked for all of them. He performed the annual spring cleaning in order to prepare the unit for the upcoming rental season. He also performed various other maintenance tasks, including painting the living room. During the second trip he was there for five days and worked for all of them. He painted the second bedroom as well as researched and purchased flooring, shutters, and blinds. During the third trip he was there for 11 days and worked for 9 of them. He researched and purchased new furniture, repaired all windows and doors, installed flooring, and began to paint the master bedroom. During the fourth trip he was there for six days and worked for three of them. During that trip he painted the master bedroom. During the fifth trip he was there for five days and worked for one of them. He painted the stairwell. During the sixth trip he was there for only one day, and he worked that day. He met with the plumbing contractor and began the demolition of one of the bathrooms. During the seventh trip he was there for six days and worked for all of them. He oversaw the demolition of the bathroom, installed a tub, and rebuilt the vanity. During the eighth trip he was there for five days and worked for four of them. He replaced the drywall in the bathroom. He also set up the television and installed cable service. During the ninth trip he was there for three days and worked for all of them. During that trip he painted one of the bathrooms. During the tenth trip he was there for four days and worked for

[*5] two of them. He completed the bathroom demolition by installing the necessary accessories and by cleaning. He also researched and purchased new carpet. During the eleventh trip he was there for three days and worked for all of them. He installed the carpet, repainted the second bedroom ceiling, and installed a mirror in the bathroom. During the final trip he was there for seven days and worked for five of them. He bought and hung curtains, replaced shoe molding in the bathroom, installed shelving, repaired lamps, touched up painting, and communicated with the realtor.

In 2009 petitioner husband took 10 trips to the condominium where he performed repairs and maintenance. During the first trip he was there for 4 days and worked for all of them. That trip he demolished one of the bathrooms. During the second trip he was there for four days and worked for all of them. He completed demolition of the bathroom, installed a new vanity and baseboard, and hooked up the sink. During the third trip he was there for one day and worked for that day. He met with the tile contractor. During the fourth trip he was there for two days and worked for both of them. He met with the ceiling contractor and performed some painting and various repairs. During the fifth trip he was there for two days and worked for both of them. He met with a painting contractor and made miscellaneous repairs. During the sixth trip he was there for five days, and

[*6] he worked for all of them. He performed the annual spring cleaning in order to prepare the unit for the upcoming rental season. During the seventh trip he was there for 11 days and worked for 10 of them. He cleaned and stained the deck, painted a bathroom, repaired the bathroom ceilings, and researched, purchased, and installed a new fan. During the eighth trip he was there for seven days and worked for two of them. He performed miscellaneous repairs. During the ninth trip he was there for three days and worked for one. He researched cabinets and hardware. During the tenth trip he was there for one day, and he worked that day. He painted the cabinets and installed new hardware for them.

In 2010 petitioner husband took six trips to the condominium where he performed repairs and maintenance. During the first trip he was there for 13 days and worked for 6 of them. He performed the annual spring cleaning in order to prepare the unit for the upcoming rental season. He also stripped the wallpaper in the kitchen, repaired the dryer, replaced damaged artwork, washed the windows, and painted part of the condominium's exterior. During the second trip he was there for six days and worked all six. He finished stripping the wallpaper in the kitchen and then painted the kitchen. He also cleaned and stained the deck. During the third trip he was there for six days and worked for three. He cleaned all of the carpets. During the fourth trip he was there for four days and worked for

**[*7]** all of them.  He repaired a door and installed a beadboard.  During the fifth trip he was there for six days and worked for four.  He installed and repaired shoe molding as well as researched and purchased bedding, a chair, lamps, and a glass top for a table.  During the sixth trip he was there for two days and worked for both of them.  He weatherproofed the front door and purchased small appliances.

Petitioner husband kept logbooks detailing petitioners' personal and business use of the condominium.

Tax Returns

Petitioners filed timely a Form 1040, U.S. Individual Income Tax Return, for each of the tax years 2008, 2009, and 2010.  Petitioners reported income from the rental of the condominium on Schedules E, Supplemental Income and Loss, of $11,702 and $11,130 for 2008 and 2009, respectively.  For 2010 petitioners reported income from the rental of the condominium on Schedule C, Profit or Loss From Business, of $18,015.  Petitioners reported expenses related to the rental of their condominium of $77,932, $67,429, and $64,003, for 2008, 2009, and 2010, respectively.

OPINION

Generally, a taxpayer bears the burden of proving the Commissioner's determinations in a notice of deficiency are erroneous.  Rule 142(a); Welch v.

[*8] Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a)(1) the burden of proof may shift to the Commissioner if the taxpayer complies with the relevant substantiation requirements in the Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews. Sec. 7491(a)(2)(A) and (B). The taxpayer bears the burden of proving compliance with the conditions of section 7491(a)(2)(A) and (B). See, e.g., Winslow v. Commissioner, 139 T.C. 270, 271 n.2 (2012); Hill v. Commissioner, T.C. Memo. 2010-200, aff'd per curiam, 436 Fed. Appx. 410 (5th Cir. 2011).

Petitioners contend that they have met this burden because (1) the stipulated logbook is credible evidence, (2) they complied with the applicable substantiation requirements by providing bank records and receipts, and (3) respondent did not allege that petitioners failed to cooperate with respondent. However, there were discrepancies and inconsistencies in their evidence. Petitioners have failed to persuasively argue that the burden shifts to respondent. The burden of proof remains with petitioners.

I.      Section 280A

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they have met all requirements necessary to be entitled to the

[*9] claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

Section 162(a) allows a deduction for ordinary and necessary business expenses paid or incurred in carrying on a trade or business. Section 262(a), however, generally prohibits deductions for personal, living, or family expenses.

Generally, no deduction is allowed with respect to the personal residence of a taxpayer. Sec. 280A(a); see also Langley v. Commissioner, T.C. Memo. 2013-22, at *5. A dwelling unit is a residence if the taxpayer uses the dwelling for personal purposes for a number of days which exceeds the greater of 14 days or 10% of the number of days during the year for which the unit is rented at a fair rental value. Sec. 280A(d)(1); see also Langley v. Commissioner, at *5. In general, if a taxpayer uses a dwelling unit for personal purposes for any part of a day, that day is counted as a personal use day. Sec. 280A(d)(2). Pursuant to section 280A(d)(2), if the taxpayer is engaged in repair and maintenance of the residence on a substantially full-time basis for any day, such use will not constitute personal use of the residence. See also Twohey v. Commissioner, T.C. Memo. 1993-547.

Personal use also includes use by qualifying relatives under section 267(c)(4). Sec. 280A(d)(2)(A). If a qualifying relative uses the property, then this

**[*10]** use will be imputed to the owners unless that individual is both renting the dwelling at fair rental value and also using it as a principal residence. Sec. 280A(d)(2)(A), (3)(A); see also Kotowicz v. Commissioner, T.C. Memo. 1991-563. Whether a property is leased for a fair rental value is determined on the facts and circumstances of each case, including consideration of, among other things, comparable rents in the area. See sec. 280A(d)(2)(C). Whether a property is used as a principal residence depends on the facts and circumstances. Sec. 1.121-1(b), Income Tax Regs.

Section 280A(c) lists exceptions to the general rule in section 280A(a). Paragraph (3) of subsection (c) provides that "[s]ubsection (a) shall not apply to any item which is attributable to the rental of the dwelling unit or portion thereof (determined after the application of subsection (e))." In general, subsection (e) requires a taxpayer who uses the dwelling unit for personal purposes during the taxable year, as a residence or otherwise, to limit his or her deduction to the amount determined after applying the percentage obtained by comparing the number of days the unit is rented to the total number of days the unit is used. Bolton v. Commissioner, 77 T.C. 104, 111-113 (1981), aff'd, 694 F.2d 556 (9th Cir. 1982). However, days spent performing repairs and maintenance generally do not count as days of "use." Sec. 280A(d)(2) (flush text). Paragraph (5) of

[*11] subsection (c) further limits the deduction authorized in the case of rental use of a residence to the excess of the gross rental income over the portion of the expenses otherwise allowable (such as mortgage interest and taxes) that are attributable to the rental use. In other words, any net rental loss cannot be offset against unrelated income. See Feldman v. Commissioner, 84 T.C. 1 (1985), aff'd, 791 F.2d 781 (9th Cir. 1986). Therefore, even if petitioners' personal use exceeds the thresholds provided in section 280A(d), we still must characterize the days petitioners used the condominium as either personal use or repair and maintenance days for purposes of the section 280A(e) calculation.

II.    Tax Years 2008 and 2010

The primary factual issue we must consider is the number of personal use days within the meaning of section 280A(d)(2) that the condominium was used during 2008 and 2010. Petitioners concede that they personally used the condominium for 14 days[1] during both 2008 and 2010. Respondent contends that petitioners' use exceeded 14 days and that petitioners' rental real estate losses for 2008 and 2010 are therefore limited by section 280A(a) and to the extent provided in section 280A(c)(3) and (5) and (e). The parties dispute how to characterize

[1]For 2008 and 2010 the parties do not dispute that 14 days is greater than 10% of the number of days during each year for which the condominium was rented.

**[*12]** petitioner husband's brother's use of the condominium for seven days in 2008 and how to characterize the days petitioner husband spent traveling to the condominium in both 2008 and 2010.

We first address how to characterize the brother's use. Because a brother is a qualifying relative under section 267(c)(4), his use will be attributed to petitioners unless he both paid fair rental value to use the condominium and used it as his principal residence. See sec. 280A(d)(2)(A), (3)(A). Petitioner husband testified that his brother paid around $950 directly to petitioners to rent the condominium for seven days. Regardless of whether this amount reflects fair rental value, petitioners did not provide any documentation, such as a copy of a check or a deposit receipt, to show that the brother actually paid petitioners. Additionally, the record establishes that the brother used the condominium for only seven days. The facts and circumstances do not indicate that it was used as his principal residence. We find that petitioners have failed to carry their burden of establishing that the brother paid fair rental value to use the condominium as his principal residence. Therefore, the seven days used by the brother are attributable to petitioners as personal use days for purposes of section 280A(d)(2).

We next address how to characterize the days petitioner husband spent traveling to the condominium to perform repairs and maintenance. Petitioners

[*13] contend that these travel days should not count as personal use days. They rely on section 1.280A-1(e)(6) and (7), Example (3), Proposed Income Tax Regs., 48 Fed. Reg. 33323 (July 21, 1983). The proposed regulation states that "a dwelling unit shall not be deemed to have been used by the taxpayer for personal purposes on any day on which the principal purpose of the use of the unit is to perform repair or maintenance work" and sets forth a "facts and circumstances" test to determine the principal purpose of the taxpayer. Example (3) of paragraph (e)(7) lays out the following example which is particularly relevant to the current case:

> A owns a lakeside cottage which A rents during the summer. A and B, A's spouse, arrive late Thursday evening after a long drive to prepare the cottage for the rental season. A and B prepare dinner but do no work on the unit that evening. A spends a normal work day working on the unit Friday and Saturday; B helps for a few hours each day but spends most of the time relaxing. By Saturday evening, the necessary maintenance work is complete. Neither A nor B works on the unit on Sunday; they depart shortly before noon. The principal purpose of the use of the unit from Thursday evening through Sunday morning is to perform maintenance work on the unit. Consequently, the use during this period will not be considered personal use by A.

Proposed regulations are not binding on this Court and are given no greater weight than a litigation position. See Canterbury v. Commissioner, 99 T.C. 223, 246 n.18 (1992); F.W. Woolworth Co. v. Commissioner, 54 T.C. 1233, 1265-1266 (1970). Nevertheless, they can be useful guidelines where, as here, they closely

**[\*14]** follow the legislative history of the statutory provision in question. See

Seawright v. Commissioner, 117 T.C. 294, 300 (2001); Van Wyk v.

Commissioner, 113 T.C. 440, 444 (1999).

Congress enacted section 280A as part of the Tax Reform Act of 1976, Pub.

L. No. 94-455, sec. 601, 90 Stat. at 1569.  We have recognized that

> [s]ection 280A * * * is a response to congressional concern that rental of property used by the taxpayer as a residence afforded the taxpayer unwarranted opportunities to obtain deductions for expenses of a personal nature.  In the case of vacation homes, the relevant congressional committee reports express the view that rental activities were frequently undertaken merely to defray the cost of maintaining a vacation home for the taxpayer's personal use, rather than for the purpose of making a profit. * * *

Bolton v. Commissioner, 77 T.C. at 107-108 (citing H.R. Rept. No. 94-1515, 94th

Cong., 2d Sess. 436 (1976), S. Rept. No. 94-938, 94th Cong., 2d Sess. 150-152

(1976), and H.R. Rept. No. 94-658, 94th Cong., 1st Sess. 162-164 (1975)).

Additionally, the flush language of section 280A(d)(2) provides that

> [t]he Secretary shall prescribe regulations with respect to the circumstances under which use of the unit for repairs and annual maintenance will not constitute personal use under this paragraph, except that if the taxpayer is engaged in repair and maintenance on a substantially full time basis for any day, such authority shall not allow the Secretary to treat a dwelling unit as being used for personal use by the taxpayer on such day merely because other individuals who are on the premises on such day are not so engaged.

**[\*15]** This language indicates that Congress did not intend for days spent primarily repairing and maintaining the vacation home to count as personal use days. It follows that days spent traveling to the site where the work is to be performed should not count either. Since this legislation was enacted in response to the concern that taxpayers were disguising personal use as business use, travel days will only escape classification as personal use days if the principal purpose of the trip as a whole is to perform repairs and maintenance.

Now we must analyze the trips taken by petitioner husband and determine the principal purpose of each. In 2008 petitioner husband took 12 trips to the condominium where he performed repairs and maintenance. Petitioners argue that all 12 days spent traveling to the condominium should be excluded because the principal purpose of each trip was to perform repairs and maintenance.[2] During six of these trips petitioner husband logged only days where he performed repairs and maintenance. Accordingly, we find that for those trips his principal purpose was to perform repairs and maintenance. However, the other six trips were for mixed business and personal use, and the principal purpose of each of those trips must be analyzed separately on the basis of the facts and circumstances.

---

[2]Both parties excluded from personal use days the days where petitioner husband spent part of the day at the condominium before he traveled back to his home in Virginia. Therefore, we exclude them as well and do not reach that issue.

[*16] During the first of these mixed trips petitioner husband traveled to the condominium and spent the first two days vacationing. He then spent the following nine days working. We find that the principal purpose of that trip was not personal and therefore the travel day and accompanying night do not count as a personal use day.

During the second trip petitioner husband traveled to the condominium and spent three days vacationing and three days working. Absent other compelling facts that the trip was motivated primarily by business, it is hard to say that the principal purpose of his trip was to perform repairs and maintenance. Keeping in mind that section 280A was enacted to prevent taxpayers from disguising personal use as business use, we find that the principal purpose of the trip was personal. Therefore, the travel day to the condominium and the accompanying night counts as a personal use day.

During the third trip petitioner husband worked for the first day and spent the remaining four days vacationing. Since the days spent vacationing outnumber those spent working, we find that the principal purpose of this trip was personal. Accordingly, the travel day to the condominium and the accompanying night counts as a personal use day.

**[*17]** During the fourth trip petitioner husband worked for four days and spent one day vacationing. Since the days working outnumber the days vacationing, the principal purpose of the trip was not personal. Accordingly, the travel day to the condominium and the accompanying night do not count as a personal use day.

During the fifth trip petitioner husband spent two days working and two days vacationing. Absent other compelling facts that the trip was motivated primarily by business, it is hard to say that the principal purpose of his trip was to perform repairs and maintenance. Keeping in mind that section 280A was enacted to prevent taxpayers from disguising personal use as business use, we find that the principal purpose of the trip was personal. Therefore, the travel day to the condominium and the accompanying night counts as a personal use day.

During the sixth trip petitioner husband spent five days working and two days vacationing. As the working days more than double the vacation days, we find that the principal purpose of the trip was to perform repairs and maintenance. Therefore, the travel day to the condominium and the accompanying night do not count as a personal use day.

In 2010 petitioner husband took six trips to the condominium during which he performed repairs and maintenance. Petitioners argue that all six days spent traveling to the condominium should be excluded. For three of these trips

**[*18]** petitioner husband only performed repairs and maintenance and did not log any personal days. Accordingly, we find that for those trips his principal purpose was to perform repairs and maintenance. However, the other three trips were for mixed business and personal use, and the principal purpose of each of those trips must be analyzed separately on the basis of the facts and circumstances.

During the first of these mixed trips petitioner husband spent six days working and the remaining seven days vacationing. Because the time he spent working was less than the time he spent vacationing, we count the travel day to the condominium and the accompanying night as a personal use day.

During the second trip petitioner husband spent three days working and three days vacationing. As we held above, although the time spent on both activities is equal, the principal purpose of the trip was personal. Therefore, the travel day to the condominium and the accompanying night counts as a personal use day.

During the last trip petitioner husband spent four days working and two days vacationing. We find that the primary purpose of the trip was to perform repairs and maintenance. Therefore, the travel day to the condominium and the accompanying night do not count as a personal use day.

**[\*19]** Given the above analysis, we find that petitioners personally used the condominium for a total of 24 days in 2008 and for a total of 16 days in 2010. We calculated the total number of personal use days for each year by excluding the days spent traveling where the primary purpose was to perform repairs and maintenance and by including the 14 days that petitioners already conceded. For 2008 we also included the seven days used by the brother. Therefore, the limitations of section 280A apply for both 2008 and 2010. Because the section 280A limitations apply for both tax years, we do not reach the issue of whether the passive loss rules of section 469 apply. See sec. 280A(a), (c)(3), (5), (e); see also sec. 469(j)(10) (regarding the coordination of section 469 and section 280A).

III.    Tax Year 2009

Petitioners concede that in 2009 their condominium was a residence under the test in section 280A(d)(1). However, they dispute the calculation of their rental use percentage, which controls the amount of the deduction to which they are entitled per section 280A(c)(3) and (5) and (e).

In order to calculate petitioners' rental use percentage, we must determine both how many days the property was rented and how many total days the property was used. In 2009 the property was rented for 84 nights. The parties stipulated that the number of days petitioners used the property in 2009 was 59. However,

**[*20]** this stipulation considers the general meaning of the term "use" and does not exclude the days petitioners spent performing repairs and maintenance.

Petitioners contend that of the 59 days spent at the condominium, 33 were repair and maintenance days and 11 were travel days. Petitioners argue that the remaining 15 days were the only personal days. Respondent contends that petitioners personally used the condominium for 35 days and only 24 days were excludable repair and maintenance days. Part of the discrepancy between the parties' calculations has to do with the characterization of the days that petitioner husband spent traveling to the condominium. However, as discussed above in section I, when the principal purpose of the trip is to perform repairs and maintenance, the travel days do not count as personal use days. Therefore, we must determine which trips petitioner husband took for the principal purpose of performing repairs and maintenance.

Although petitioners contend that petitioner husband took 11 trips where he performed repairs and maintenance, on one of those trips he was at the condominium for two days and did not engage in any repair or maintenance activity. Accordingly, we add those two days to petitioners' total personal use days. That leaves 10 trips to the condominium during which petitioner husband performed repairs and maintenance. For seven of the trips petitioner husband only

[*21] performed repairs and maintenance and did not log any personal days. Accordingly, we find that for those trips his principal purpose was to perform repairs and maintenance. However, the other three trips were for mixed business and personal use, and the principal purpose of each of those trips must be analyzed separately on the basis of the facts and circumstances.

During the first of these mixed trips petitioner husband spent 10 days working and 1 day vacationing. Since the days working outnumber the days vacationing, the principal purpose of this trip was not personal. Accordingly, the travel day to the condominium and the accompanying night do not count as a personal use day.

During the second trip petitioner husband spent two days working and five days vacationing. Since the days vacationing outnumber the days working, the principal purpose of this trip was personal. Accordingly, the travel day to the condominium and the accompanying night counts as a personal use day.

During the third trip petitioner husband traveled to the condominium and spent one day working and two days vacationing. As the days vacationing double the days working, the principal purpose of the trip was personal. Therefore, the travel day to the condominium and the accompanying night counts as a personal use day.

**[*22]** On the basis of the above, we find that petitioners personally used the condominium for 19 days in 2009. We arrived at this calculation by adding the two travel days where the principal purpose of the trip was personal, the 15 days that petitioners had already conceded, and the two days from the trip where petitioner husband did not perform any repairs or maintenance. Of the remaining 40 days, respondent concedes that 24 were spent performing repairs and maintenance. Petitioners argue that all 40 were spent performing repairs and maintenance. On the basis of petitioner husband's logbook and credible testimony as to what activities he performed on these days, we agree with petitioners that 40 days were spent engaged in repairs and maintenance. Petitioners' rental real estate loss deduction for 2009 will be adjusted according to these findings.

Finally, any loss deductions that petitioners are not allowed by virtue of the limitations in section 280A(c)(5) shall be carried forward to 2010 subject to the limitations of that same section. Sec. 280A(c)(5) (providing that such amounts "shall be taken into account as a deduction * * * for the succeeding taxable year" subject to the gross income limitation described above in section I).

[*23] Any contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.