S. Richard FINE, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 79 C 2984.

United States District Court,
N. D. Illinois, E. D.

July 23, 1980.

Julian L. Berman, Stuart Duhl and Richard Meltzer, Schwartz & Freeman, I.D., Chicago, Ill., for plaintiff.

Seth G. Heald, Tax Division, Dept. of Justice, Washington, D.C., and Thomas P. Sullivan, U.S. Atty., Chicago, Ill., for defendant.

## OPINION and ORDER

BUA, District Judge.

The action at bar is a taxpayer refund suit, the plaintiff herein claiming that he was improperly denied a maintenance loss deduction on a condominium he owned in Florida. As the defendant Commissioner of Internal Revenue's denial of this deduction was based upon the provisions of section 280A(a) and (d)(1) of the Internal Revenue Code, 26 U.S.C. § 280A(a) and (d)(1),[1] juris-

---

1. 26 U.S.C. § 280A provides in pertinent part:
   (a) General rule. Except as otherwise provided in this section, in the case of a taxpayer who is an individual or an electing small business corporation, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

\* \* \* \* \* \*

diction over the matter lies pursuant to 28 U.S.C. § 1346(a)(1).

Currently pending before the court are cross-motions for summary judgment. Rule 56(a) and (b), Fed. R. Crim. P. The issues presented in said motions are such that, if the plaintiff's interpretation of section 280A is not accepted, the defendant must prevail. That being, so, for the reasons stated below, the defendant's motion for summary judgment will be granted.

The facts in the present matter are not disputed. In 1976, the tax year in question, the plaintiff, S. Richard Fine, was the co-owner of a condominium unit in a Florida resort complex known as Innisbrook. Mr. Fine, in that year, became a party to a rental pool agreement with the Innisbrook resort management company, pursuant to which his unit was made available for rental to others for a period of 333 days. Under the terms of this pool agreement, the plaintiff was to be compensated to a limited extent for each day his condominium was available for rental, and in a larger amount for each day the unit was in fact rented.[2] During the rental availability period, Mr. Fine was required to surrender his personal right of possession and access to his unit.

In 1976, the plaintiff's unit, during the period covered by the pool agreement, was rented for 149 days and remained unoccupied for 154. Mr. Fine, in addition, occupied the unit on a personal basis, not subject to the rental pool agreement, for 20 days.

In contending that he is entitled to summary judgment, plaintiff Fine takes the position that his rental agreement with the Innisbrook management company constituted a lease, negotiated in what must be considered an arms-length transaction. That being so, he argues, the court must necessarily look upon his condominium as having been rented, at fair market value, to the management company for the entire 333 day period encompassed by the pool agreement. Citing *Kingsbury v. Commissioner*, 65 T.C. 1068 (1976) and *Berry v. Commissioner*, 37 T.C.M. 326 (CCH 1978) as authority, the plaintiff bases his construction of the rental pool agreement on the fact that, for the period his unit was available for rental by the management company, he had no right of possession or control with respect to it. Indeed, under the terms of the document, on those dates when the unit was covered by the agreement, plaintiff Fine would have had to pay the Innisbrook company full rent if he wished to occupy it.

The defendant Commissioner's initial argument against the plaintiff's position is founded upon the language of the rental agreement itself. Said agreement was expressly characterized as an agency appointment, and provided that the management company's rental of participating units to third-parties was to be on behalf of the condominium owner. These factors, the government argues, indicate that the relationship between plaintiff Fine and the Innisbrook management company was one of principal-agent, not lessor-lessee. Assuming this to have in fact been their relationship, the Commissioner then contends that, because under such an arrangement rental of the plaintiff's unit could only have been through—not by or to—Innisbrook, Mr. Fine's condominium must be viewed as hav-

---

(d) Use as residence.
(1) In general. For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of—
(A) 14 days, or
(B) 10 percent of the number of days during such year for which such unit is rented at a fair rental.
For purposes of subparagraph (B): a unit shall not be treated as rented at a fair rental

for any day for which it is used for personal purposes.

2. Under the terms of the rental pool agreement, 33% of all rentals received went directly to the pool participants, to be distributed in accordance with previously determined "participation" factors. In addition, owners of condominiums actually occupied by renters were given 20% of the rents received for their particular units. This additional amount was, at least in part, designed and intended to compensate the owners of occupied units for the "wear and tear" to their property.

ing been rented only for those 149 days when it actually was occupied by third-party renters.[3]

The defendant, in the alternative, also contends that, even if plaintiff Fine's condominium was leased to Innisbrook during the 333 days in question, he did not receive fair rental value for the unit during all of that period. In support of this premise the Commissioner argues primarily that, because Mr. Fine received a substantially greater rental fee for this condominium during the 149 days when it was occupied, that figure better represents the fair market value for the unit under the leasing arrangement at issue. As that is so, the Commissioner reasons, the lesser amount received by the plaintiff for the 154 days the unit was unoccupied cannot for purposes of section 280A properly be considered fair value.[4]

The questions involved in the case at bar are, for the most part, ones of first impression. That said questions are very close, moreover, is amply evidenced by the parties' ably presented arguments. Despite that fact, however, the court, after reviewing the various materials before it, believes that the 1976 rental agreement in effect between plaintiff Fine and the Innisbrook management company must, for purposes of the present matter, be treated as a lease. The court, though, also is of the opinion that the characterization given to the agreement is really of limited importance. Rather, the fundamental question to be resolved appears instead to be whether Congress intended that the arrangement at issue fall within the restrictions of section 280A. *See Glatt v. United States*, 470 F.2d 596 (Ct.Cl. 1972).

In enacting section 280A, Congress attempted to establish definitive criteria specifying the extent to which personal use of a vacation home would result in the disallowance of certain deductions, including those at issue in the present matter, in excess of the gross income received from the rental of such property. [1976] U.S. Code Cong. & Admin. News, pp. 2897, 3058. Through its actions, Congress intended to minimize, with an apparent eye toward eliminating, situations where a taxpayer owning a vacation home could at his pleasure use the property for both personal and business reasons, rent it if desired to help defray related maintenance expenses, and then, by merely characterizing said property as a depreciable asset, incur a tax loss with respect to it. *See* S. Rep. No. 94–938, 94th Cong., 2d Sess. 151–52 (1976).

One criterion developed by Congress was that the taxpayer's personal occupancy of the home in question could not exceed ten percent of the days when it [the vacation home] was actually rented at "fair rental" value. 26 U.S.C. § 280A(d)(1)(B). Although the term "fair rental" was not specifically defined, in light of the clear Congressional intent with respect to section 280A, this court believes that, absent the existence of circumstances not relevant to the present matter, it can only pertain to a rental which is sufficient to permit the taxpayer to, in time, make a taxable profit on his vacation property. Simply put, the court does not feel that Congress, when using the term "fair rental" in section 280A, contemplated a situation where the taxpayer would be able to, even in an arms-length transaction, properly rent his vacation property for an amount which would

3. This argument of the defendant, if established, would be totally dispositive of the present matter. Because Mr. Fine made personal use of his unit for 20 days, pursuant to section 280A(d)(1)(B) of the Internal Revenue Code, 26 U.S.C. § 280A(d)(1)(B), before the maintenance loss at issue could properly have been allowed, the plaintiff's condominium would have had to have been rented, at fair value, for at least 200 days.

4. The Commissioner also appears to be arguing that, because the dollar amount received by participants in the pool agreement under discussion would necessarily vary with the number of units actually rented, and thus in theory could total nothing in any given tax year, the arrangement is, by virtue of that fact alone, one not cognizable under section 280A. This court, however, does not believe such a broad construction of that Code provision is either necessary or warranted under the circumstances presented.

allow him to continually claim a loss on it for tax purposes. *See* [1976] U.S. Code Cong. & Admin. News, p. 3058.

■ In the present matter, it is undisputed that in 1976 plaintiff Fine occupied his Florida condominium on a personal basis for 20 days,[5] and that his unit was rented out for what quite probably was fair rental value for 149 days. This court, however, does not believe that Mr. Fine received fair rental value for his condominium during the remaining 154 day period the unit was rented to Innisbrook. From the facts presented, it does not appear that the percentage based "unoccupied" rental fee paid to participants under the rental pool agreement in question, *see* footnote 2, page 3, would ever be adequate to reasonably insure that the plaintiff could make an after tax profit on the rental of his unit. This conclusion is directly supported by the fact that, although occupancy of Mr. Fine's unit exceeded both the expected and average rate for those units in the rental pool, thus leading to his receiving significantly greater rental income, the plaintiff still was able in tax years 1977 and 1978 to claim a loss for tax purposes on the rental of his condominium.[6]

Accordingly, as the arrangement under discussion clearly was one sought to be limited by the enactment, in that plaintiff Fine made personal use of his Florida condominium for 20 days, and said unit was only rented at fair value for 149 days, under the general provisions of section 280A the Commissioner's denial of the maintenance loss at issue must be looked upon as proper. 26 U.S.C. § 280A(a) and (d)(1)(B).

■ The plaintiff, however, also argues in support of his motion for summary judgment that the Commissioner, in denying the deduction in question, acted improperly because his [plaintiff Fine's] condominium must be viewed as being encompassed by the provisions of section 280A(f)(1)(B) of the Internal Revenue Code, 26 U.S.C. § 280A(f)(1)(B),[7] which excludes from the general restrictions of section 280A that portion of a dwelling unit used exclusively as a hotel, motel, inn, or similar establishment. This argument, however, the court believes to be totally without merit. Although in 1976 the Innisbrook resort complex was run primarily as a hotel,[8] it is clear from the facts presented that the plaintiff's unit therein was used by him for at least 20 days for purely private purposes. During this period, the resort complex had no rights with respect to plaintiff Fine's unit. Mr. Fine also during this time paid no rent to Innisbrook, owed no duties to the complex other than those owed to it by all condominium owners, and had full right of access and possession with regard to the unit.

When these facts are considered, to conclude that Mr. Fine's condominium was used exclusively as a hotel in 1976 would, this court believes, be patently in error. In addition to requiring a misconstruction of the term "exclusive",[9] such a conclusion

---

5. Under the terms of the rental pool agreement at issue, the choice of the dates he could reserve his condominium for personal occupancy was left essentially to plaintiff Fine's discretion.

6. Support for the conclusion that the arrangement under discussion was one sought to be circumscribed by section 280A is further provided by the fact that, although claiming a tax loss in each of those years, plaintiff Fine made an operating (cash) profit on the rental of his condominium by Innisbrook.

7. 26 U.S.C. § 280A(f)(1)(B) provides in pertinent part:

(1) Dwelling unit defined.—For purposes of this section—

   \*    \*    \*    \*    \*    \*

(B) Exception.—The term "dwelling unit" does not include that portion of a unit which is used exclusively as a hotel, motel, inn, or similar establishment.

8. The entirety of the Innisbrook complex, however, was not used as a hotel in that year. Approximately twenty percent of the condominiums in the resort did not participate in the rental pool agreement in 1976.

9. The relevant definition given to the word "exclusive" in Webster's Third New International Dictionary [Unabridged] is:

exclusive—1a: excluding or having power to exclude (as by preventing entrance or debarring from possession, participation, or use) (i. e. regulations) b: limiting or limited to possession, control, or use (as by a single individual

would, under the present circumstances, be in direct contradiction with Congress' clear purpose for enacting section 280A. That being so, the plaintiff's argument regarding this point also is denied.

For the reasons stated above, the following is ordered:

Plaintiff S. Richard Fine's motion for summary judgment Rule 56(a), Fed. R. Civ. P., is DENIED.

The motion for summary judgment of the defendant Commissioner of Internal Revenue, Rule 56(b), Fed. R. Civ. P., is GRANTED.

IT IS SO ORDERED.

or organization or by a special group or class). 2: excluding or inclined to exclude others (as outsiders) from participation (as in an association or privilege) or from cordial relations, sometimes (snobbishly aloof) (i. e. clique) (i. e. attitude) (i. e. standards). 3a: admitting of or soliciting only a socially restricted patronage (as of the upper classes) (i. e. hotels or haberdashers) . . . .