WILLIAM B. BUCHHOLZ AND BARBARA J. BUCHHOLZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Buchholz v. Commissioner
Docket No. 4351-79.
United States Tax Court
T.C. Memo 1983-378; 1983 Tax Ct. Memo LEXIS 408; 46 T.C.M. (CCH) 608; T.C.M. (RIA) 83378; June 27, 1983. Terence J. Yamada and Peter M. Gunnar, for the petitioners. Ralph W. Jones, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency *410 in petitioners' Federal income taxes for 1976 in the amount of $198. The issues for decision are: 1. Whether petitioners are entitled to deduct expenses incurred in connection with the rental of a two-unit condominium in excess of the limitations of section 280A. [1]
2. Whether petitioners properly reported their rental income from the condominium in 1976. FINDINGS OF FACT This case was submitted fully stipulated pursuant to Rule 122. [2] The stipulation of facts and exhibits attached thereto are incorporated herein. Petitioners William B. Buchholz and Barbara J. Buchholz, husband and wife, resided in Oregon when their petition was filed. They timely filed a joint income tax return for 1976 with the Internal Revenue Service Center at Ogden, Utah. In 1975, petitioners, together with another couple, named Stokes, purchased a two bedroom condominium for $32,500. The condominium was one of 96 units in the Tolovana Inn, *411 a resort hotel located on the Pacific Ocean south of Cannon Beach, Oregon, a well-established recreation and resort area. Stokes investigated several condominium projects on the Oregon coast and determined, based on comparative locations, managements, operations and prices of available properties, that a condominium would represent a good investment. Relying on Stokes' advice, petitioners purchased their one-half interest in the condominium as an investment, believing that it would increase in value and would bring a positive cash flow and net operating profit in the future. Petitioners and the Stokes couple divided their condominium into two rental accommodations, numbered 221 and 271, each with separate entrance, bedroom, bath, television set and telephone. Unit 221, the larger of the two rental accommodations, also contained kitchen facilities and a fireplace. During 1976, petitioners and their co-owners rented unit 221 at a fair rental on 295 calendar days and personally used it on 34 calendar days. Petitioners and the Stokes used unit 271 less than the greater of 14 days or 10 percent of the number of days in 1976 when the unit was rented at a fair rental. All condominium *412 owners at Tolovana are members of an association which is responsible for maintenance and repairs as well as for insuring the common areas of the hotel including the indoor swimming pool, recreation area, sauna, and facilities for group meetings. Vacation Villages of America, Inc. (Vacation Villages) managed the owners association in 1976. Eighty-eight of the 96 condominium owners, including petitioners, entered into a separate rental pooling agreement with Vacation Villages to operate their condominiums as a resort hotel. Under this agreement (1) Vacation Villages was appointed agent for each participating owner in the management and rental of their condominium at Tolovana Inn; (2) usually each condominium was rented as a single unit, but if it, like petitioners, had a separate outside entrance to each bedroom, with bath, the condominium could be divided into two rental units; (3) the income from all the condominiums so operated was pooled and distributed upon an agreed formula; and (4) the agent received a fee from which it paid certain costs associated with the hotel operation of the facilities such as maid services, linen supplies, front desk and reservation services. Owners *413 were required to give Vacation Villages 60 days notice of any intention to occupy their units and were requested to reserve their condominium 12 months in advance for holidays. An owner paid no rent to Tolovana while he occupied his own condominium. When an owner's unit was occupied, he could use any other available unit on the condition that he pay the agency any excess in rental value of the unit he occupied over the unit he owned. For its services, Vacation Villages received 40 percent of gross income from condominium rentals minus refunds. The condominium owners received 50 percent of gross rentals less certain budgeted expenses such as the association fees of the owners. The remainder of the rental income was allocated to a reserve for repairs and maintenance. During 1976, Tolovana as a whole operated essentially as a hotel because among other things: (1) it had a central switchboard with separate telephones in each rental accommodation; (2) it had a central front desk which received messages for guests and handled reservations, check-ins, check-outs and payments; (3) it had an experienced general manager who was in charge of its day to day operations; (4) it supplied *414 daily maid service, including linens and toiletry articles for its guests; (5) it used standard hotel accounting systems and procedures; (6) it was listed and rated in the usual travel guides and was a member of the usual hotel organizations such as the Oregon Hotel and Motel Association; and (7) it offered and participated in all other services and activities generally provided by hotels and motels owned by individuals or corporations. During 1976, the condominium owned by the petitioners and the Stokes was rented for a total of $3,276.87, of which $2,163.49 came from 221 and $1,113.38 from 271. The petitioners' share of the total rents was $1,092.84 from unit 221 and $545.60 from unit 271, or a total of $1,638.44. On their 1976 return, petitioners reported income from the rental of the dondominium in the amount of $1,031 which represented their share of the total rents less their share of the manager's fee and operating expenses. They also claimed deductions with respect to the condominium for real estate taxes of $338, mortgage interest of $886, and depreciation of $650. In his notice of deficiency, respondent increased petitioners' rental income from $1,031 to $1,638 and *415 disallowed the deductions for taxes, interest and depreciation in excess of the $1,638. OPINION I. Deductions Attributable to the Rental of the Condominium.
Section 280A, generally, limits the deductions allowable to a taxpayer which are attributable to the rental of a dwelling unit if the taxpayer personally uses the unit in excess of the greater of fourteen days or ten prcent of the number of days during the year on which the unit is actually rented at a fair rental. [3] Section 280A(a) and (d). If a taxpayer exceeds the personal use limitations for the dwelling unit in a taxable year, the deductions attributable to the rental activity are limited to the amount by which the gross income from the activity exceeds the deductions otherwise allowable to the activity, such as interest and taxes. Section 280A(c)(5). Under subsection (c)(5) the allocation of interest and taxes to *416 rental use is determined according to the ratio of the number of days a unit is rented over the total number of days in the year. Bolton v. Commissioner,77 T.C. 104 (1981), affd. 694 F.2d 556 (9th Cir. 1982). Rental expenses other than interest and taxes are determined under subsection (e)(1). That paragraph provides that the amount deductible shall not exceed an amount which bears the same relationship to the rental expenses as the number of days the unit is rented at a fair rental bears to the total number of days the unit is used. [4] See Bolton v. Commissioner,supra at 109. *417 In enacting section 280A, Congress attempted to establish definitive rules on the extent to which personal use of vacation property would result in the disallowance of deductions in excess of gross income from renting the property. Congress was concerned that taxpayers were converting personal expenditures related to a vacation home into business deductions merely by renting it for a time and then characterizing the vacation home as a depreciable asset. Petitioners and the Stokes occupied unit 221 of their condominium on 34 calendar days and rented the unit at a fair rental on 295 calendar days in 1976. On the remaining 37 days this unit was unoccupied but available for rent. Since petitioners occupied unit 221 more than 10 percent of the number of days it was rented, deductions for this unit in 1976 may not exceed petitioners' share of gross income from the unit. [5] Section 280A(c)(5). Under subsection (c)(5) the amount of deductible interest and taxes is determined by the fraction 295/366. Thus, petitioners may deduct 80.6 percent or $653.12 of the proportion of claimed realty taxes and mortgage interest totaling $816.40 which are allocated to unit 221. Compare Bolton v. Commissioner,77 T.C. 104, 110-112. *418 [6]
Petitioners also claimed $650 depreciation on their rental property. Two thirds of this amount, or $433.55 is attributable to unit 221. Under subsection (e)(1) the tentative amount deductible is $388.75. [7] However, subsection (c)(5) further limits allowable rental expense deductions to the excess of gross rental income ($1,092.84) over allocable expenses that are otherwise allowable (interest and taxes totaling $653.12). Since the subsection (e)(1) amount is less than the $439.72 available, petitioners may deduct $388.75 depreciation. Respecting unit 271, petitioners' share of gross rents was $545.60. The proportion of claimed deductions for realty taxes, interest and depreciation attributable *419 to the unit totals $624.05. Since petitioners and the Stokes did not occupy this unit more than the greater of 14 days or 10 percent of the number of days it was rented at a fair rental, allowable expenses for it are determined under sections 212 and 167(a) and not section 280A. Sections 167(a) and 212 provide that if property is held for investment, expenses attributable thereto are deductible. See, e.g., Hoopengarner v. Commissioner,80 T.C. 538 (1983). We have found that petitioners' condominium was acquired and held as an investment. We conclude, therefore, that expenses attributable to the rental of unit 271 are deductible. Petitioners argue that the entire condominium should escape treatment under section 280A because it was operated exclusively as a hotel. Section 280A(f)(1)(B). This argument must fail for the statute plainly excepts only those units exclusively used as a hotel, motel, inn or similar establishment. The parties have stipulated as to the number of days of personal use of both units of the condominium by the petitioners and the Stokes. For those days, no rent was paid to Vacation Villages and the hotel management exercised no rights *420 with respect to their units. Consequently, their units were not operated exclusively as a hotel within the meaning of section 280A(f)(1)(B). This conclusion is not altered by the fact that Tolovana as a whole did operate as a hotel. Fine v. United States,493 F. Supp. 540, 543-544 (N.D. Ill. 1980), affd. on this issue 647 F.2d 763 (7th Cir. 1981). Petitioners further contend that in the hotel industry, "hotel days" are used rather than calendar days. A "hotel day" is the 24-hour period starting at check-in time on one calendar day and ending at check-in time on the following calendar day. The petitioners argue that because of its use in the industry a "hotel day" is the appropriate unit of measurement under section 280A(d). The argument is made because when hotel days are counted instead of calendar days unit 221 is also exempt from section 280A because it was personally used less than 10 percent of the time it was rented to the public. However, nothing in the statute or legislative history supports the use of hotel days rather than the language of section 280A(d). Thus, this theory must also fail. Finally, petitioners take the position that *421 because they are participants in a pooling arrangement, we should construe section 280A(d) to mean average rental occupancy rather than actual rental of a unit, again reaching the result that petitioners occupied unit 221 less than 10 percent of the days it was rented at a fair rental. The petitioners are mistaken, however, because if we include the remaining 37 calendar days that unit 221 was vacant but participating in the rental pool, the personal use of the unit would still exceed 10 percent of the total (i.e. 34/332 days). Furthermore, the Seventh Circuit, on similar facts, has ruled that a taxpayer's condominium was not rented at a fair rental during the days it participated in a rental pool and was available for rent, but in fact was not rented to guests. Fine v. United States, 647 F.2d at 767. See also H. Rept. 94-658 (1975), 1976-2 (Vol. 2) C.B. 695, 858. "The period during which the vacation home is merely held out for rent would not be considered in determining the number of rental days for a taxable year." See also S. Rept. 94-938 (1976), 1976-3 (Vol. 3) C.B. 49, 155. II. Rental Income from the Condominium.
In the statutory notice of *422 deficiency, respondent charged petitioners with a one-half share of gross rental income from the condominium of $1,638. Petitioners reported rental income of $1,031, reflecting the deduction of various management expenses. Petitioners bear the burden of proving respondent's determination incorrect. Welch v. Helvering,333 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. The Statement of Owner's Shares submitted as a joint exhibit clearly shows gross rental receipts from units 221 and 271 totaling $3,276.87. Petitioners' one-half share is $1,638.44. Respondent's determination, therefore, is sustained. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Unless otherwise indicated, any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.↩
3. A taxpayer is deemed to have used a dwelling unit for personal purposes for a day if the unit is used, interalia,↩ by (1) the taxpayer or any other person who owns an interest therein, or (2) any other person who uses the dwelling unit unless the unit is rented for a fair rental.
4. The legislative history makes clear that the limitation applies to vacation homes. See Staff of the Joint Committee on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 1, 158. In any case where there is any personal use of a dwelling unit during the taxpayer's taxable year (whether or not that personal use constitutes use as a residence), the expenses allocable to the rental of the vacation home will be limited to an amount which bears the same ratio to such expenses as the number of days the unit is actually rented out for the year bears to the total number of days the unit is actually used for all purposes during the year. However, the limitation upon allocable expenses would not apply to expenses such as interest or taxes which are allowable even if not attributable to the rental activity. See also H. Rept. 94-658 (1975), 1976-3 (Vol. 2) C.B. 695, 856; S. Rept. 94-938 (1976), 1976-3 (Vol. 3) C.B. 49, 189-190↩.
5. Respondent asserts that there is no reasonable basis on which an allocation of income and expenses may be made between the two units. However, two thirds of the income provided by the condominium came from unit 221. Accordingly, two thirds of claimed expenses may be prorated to unit 221. ↩
6. The remaining $63.28 of allocable interest and taxes are deductible as itemized deductions under sections 163 and 164.↩
7. 295 days rented over 329 days of actual use times $433.55.↩