*Decision will be entered under Rule 155.*

KENNETH G. BYERS, JR., AND NEDRA BYERS, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18945–80.    Filed June 5, 1984.

---

*John W. Lee*, for the petitioners.
*Larry D. Anderson*, for the respondent.

WILES, *Judge*: Respondent determined the following deficiencies in petitioners' Federal income taxes:

| Taxable year | Deficiency |
|---|---|
| 1974 | $2,754 |
| 1975 | 198 |
| 1976 | 5,419 |
| 1978 | 3,626 |

Petitioners have conceded all issues except those attributable to deductions taken on their vacation home in 1976 and 1978. The issues remaining for decision are: (1) Whether petitioners' condominium units were used exclusively as a hotel within the meaning of section 280A(f)(1)(B);[1] (2) whether petitioners' condominium units were rented at fair value while the units were participating in a mandatory rental pool agreement; (3) whether the partnership's use of petitioners' units as complimentary rooms for individuals inspecting the hotel in anticipation of booking future conventions constitutes personal use to petitioners under section 280A(d)(2); and (4) whether petitioners' personal use of their units exceeded the limitations of section 280A(d)(1).

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Kenneth G. Byers and Nedra Byers, husband and wife, resided in Atlanta, Ga., when they filed their petition in this case. Petitioners filed joint Federal income tax returns

---

[1] All section references are to the Internal Revenue Code of 1954 as amended.

(Forms 1040) for the taxable years 1974, 1975, 1976, and 1978 with the Internal Revenue Service Center at Chamblee, Ga.

In 1974, petitioners purchased two condominium units, numbered 642 and 742, in the Colony Beach & Tennis Club (hereinafter the Colony) which was operated as a resort hotel in Sarasota, Fla.; number 642 was a one-bedroom unit and number 742 was a two-bedroom unit. Each purchaser of a condominium unit obtained private ownership of the interior of the apartment and an undivided 1/244th interest in the common areas of the complex which were maintained by an association made up of all the owners. Every owner was required to purchase an interest as a limited partner in the Colony Beach & Tennis Club, Ltd., a limited partnership organized for the purpose of managing the day-to-day operations of the Colony as a resort hotel (hereinafter referred to as the partnership). Condominium units and the limited partnership interests were offered and sold to the public only in combination; neither the condominium unit nor the partnership interest could be transferred separately.

The Colony consisted of 18 separate buildings which contained a total of 232 fully furnished apartment units. There were 7 different types of units; 104 one-bedroom units; 104 two-bedroom units; 12 clubhouse units; 3 beach units; 5 lanai units; 2 suite units; and 2 special units. All the one- and two-bedroom units had a fully furnished living room, dining area, and kitchen. The most desirable units were 12 units with a beachfront and water view. Following those units, the most requested units were four units, including petitioners' two units, which had an unobstructed view of tennis court number one.

To enable the Colony to operate as a resort hotel, the partnership agreement required each limited partner to place his unit in a rental pool. Under the rental pool arrangement, an owner's unit was available to the partnership for daily rental to hotel guests during the entire year, except that each owner was allowed an aggregate of 30 days' rent-free personal use annually. In order to use his condominium unit, an owner was required to make an advance reservation and, if his unit had been rented to hotel guests, an owner would have to use another available unit.

During the years in issue, the partnership operated the Colony as a resort hotel. The partnership was responsible for the expenses associated with running a resort hotel, and it exercised full control over occupancy of all the units. The partnership set the daily rates charged for the various types of units. The rates varied with the units' location; beachfront units commanded the highest rate while units farthest from the beach commanded the lowest rate. Petitioners' units, although second in desirability only to the 12 beachfront units with a water view, were priced in the middle. The partnership did not have weekly or monthly rates, but it did occasionally set special package rates for group and business conventions.

In order to encourage the booking of groups and conventions, the partnership commonly gave individuals inspecting the Colony for a future convention a unit rent free for a day (hereinafter referred to as a complimentary room). The partnership often used the most desirable units, including petitioners' units, as complimentary rooms.

Pursuant to the partnership agreement, net operating income up to $1,553,450 is allocated 5 percent to the general partner and 95 percent to the limited partners, net operating income in excess of $1,553,450 is allocated 50 percent to the general partner and 50 percent to the limited partners, and losses are allocated 5 percent to the general partner and 95 percent to the limited partners. Allocation of income and loss among individual limited partners is based upon predetermined formulas which relate to the type of unit owned. In other words, the same type of unit (one bedroom, two bedroom, etc.) receives the same percentage of the rental profit and loss regardless of how often or at what rate a particular unit is actually rented to hotel guests.

At no time throughout the years in issue did the partnership maintain daily records showing whether a particular unit was rented, occupied by its owner or another owner rent free, or used as a complimentary room. As was common practice in the hotel industry, the partnership kept a record of the total average daily, monthly, and yearly occupancy of the hotel. In 1976, the Colony's monthly occupancy ranged from a high of 80 percent in February to a low of 23 percent in September; the average yearly occupancy that year was 45.7 percent. In 1978, the Colony's monthly occupancy ranged from a high of

72 percent in March to a low of 41 percent in January; the average yearly occupancy that year was 54.7 percent. These percentages included rent-free use by the owners as well as use of complimentary rooms. While no exact figures are available for the percentage of rent-free and complimentary use during the years in issue, in 1980 and 1981, the average occupancy attributable to both owner-occupancy and complimentary use was 9.7 percent and 8.9 percent, respectively.

In order to cut down on operating expenses, the partnership closed down three or four of the least desirable buildings during the off season, generally from May to November. Thus, throughout the year, there was a consistent demand for the 16 most desirable units, which included petitioners' two units. These units were almost always occupied.

During 1976, petitioners, their relatives, or friends used each of the units for personal purposes for the full 30 days as permitted by the partnership agreement. During 1978, petitioners, their relatives, or friends used unit number 642 and unit number 742 for personal purposes for 16 days and 22 days, respectively. On their 1976 and 1978 Federal income tax returns, petitioners reported rental losses of $13,836 and $13,663, respectively, from their rental of their two condominium units. In the notice of deficiency, respondent determined that petitioners' personal use of each unit exceeded the limits imposed by section 280A(d)(1) and, therefore, respondent limited petitioners' deductions to interest and taxes paid on the property.

## OPINION

We must determine whether section 280A limits petitioners' deductions attributable to rental of their two condominium units. Generally, section 280A limits a taxpayer's deductions on a dwelling unit if a taxpayer's personal use of the unit exceeds the greater of 14 days or 10 percent of the number of days during the year that the unit is "rented at a fair rental." Sec. 280(A)(d)(1). Section 280A(f)(1)(B) provides an exception to the general limitations of section 280A for that portion of a unit "which is used exclusively as a hotel."

If a taxpayer exceeds the personal use limitation, the deductions attributable to the unit[2] are limited to the amount by which the gross income from the activity exceeds the deductions otherwise allowable to the activity, such as interest and taxes, which are attributable to rental use. Sec. 280A(c)(5). Under subsection (c)(5), the allocation of interest and taxes to rental use is determined according to the ratio of the number of days a unit is rented over the total number of days in the year. *Bolton v. Commissioner*, 77 T.C. 104, 110 (1981), affd. 694 F.2d 556 (9th Cir. 1982).

The parties have stipulated that during 1976 both condominium units were used for personal purposes for 30 days, and during 1978, unit number 642 and unit number 742 were used for personal purposes for 16 days and 22 days, respectively. Thus, unless petitioners' units are considered to be "used exclusively as a hotel" or unless petitioners' personal use is less than 10 percent of the number of days each unit was rented at a fair rental, petitioners' deductions attributable to the units will be limited by section 280A(c)(5).

## *Issue 1. Used Exclusively as a Hotel*

Petitioners' initial argument is that their units come within the provisions of section 280A(f)(1)(B), which excludes from the general limitations of section 280A that portion of a dwelling unit "used exclusively as a hotel, motel, inn, or similar establishment.[3] In support of their position, petitioners rely on the fact that the Colony was operated as a resort hotel, and occupancy of their units rent free (up to 30 days annually) was subject to advance reservations. Therefore, petitioners con-

---

[2]In general, the deductible expenses attributable to the unit (other than interest and taxes) shall not exceed an amount which bears the same relationship to the rental expenses as the number of days the unit is rented at a fair rental bears to the total number of days the unit is used during the year. Sec. 280A(e)(1), (2); *Bolton v. Commissioner*, 77 T.C. 104, 109 (1981), affd. 694 F.2d 556 (9th Cir. 1982).

[3]Sec. 280A(f)(1) provides in relevent part:

(1) DWELLING UNIT DEFINED.—For purposes of this section—

(A) IN GENERAL.—The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and all structures or other property appurtenant to such dwelling unit.

(B) EXCEPTIONS.—The term "dwelling unit" does not include that portion of a unit which is used exclusively as a hotel, motel, inn, or similar establishment.

clude that their dwelling units were used exclusively as a hotel within the meaning of section 280A(f)(1)(B). We disagree.

Section 280A(f)(1)(B) excepts only that portion of a dwelling unit used *exclusively* as a hotel or similar establishment. When interpreting this provision, the word "exclusively" should be given its ordinary and common meaning. *Crane v. Commissioner*, 331 U.S. 1 (1947); *Old Colony Railroad Co. v. Commissioner*, 284 U.S. 552 (1932). Black's Law Dictionary defines "exclusively" as "apart from all others; only; solely; substantially all or for the greater part." Black's Law Dictionary 507 (5th ed. 1979). Furthermore, we have interpreted "exclusively" as meaning solely for purposes of the exclusivity requirement of section 280A(c)(1) (home office deduction) and can find no reason why it should have a different meaning in section 280A(f)(1)(B). *Naggar v. Commissioner*, T.C. Memo. 1983–559. Therefore, any rent-free personal use of a unit during a taxable year precludes finding that such unit was used "exclusively as a hotel."

Petitioners have stipulated that units number 642 and number 742 were used for personal purposes during each of the years in issue. On those days, petitioners, their relatives, or friends paid no rent to the partnership, enjoyed full access and possession of their units, and utilized all of the facilities of the Colony including tennis and beach privileges. Consequently, petitioners' units were not "used exclusively as a hotel" within the meaning of section 280A(f)(1)(B). Petitioners' reliance on the manner in which the Colony was operated is misplaced. The statute requires that we look to the actual use of each unit (or portion thereof) and not the overall operation of the condominium complex. *Fine v. United States*, 493 F. Supp. 540, 543–544 (N.D. Ill. 1980), affd. on this issue 647 F.2d 763 (7th Cir. 1981); *Buchholz v. Commissioner*, T.C. Memo. 1983–378, on appeal (9th Cir., Jan. 23, 1984).

## *Issue 2. Rented at Fair Rental*

We now turn to petitioners' alternative contention that their units were rented at a fair rental to the partnership.

Section 280A(d)(1)(B) requires that a taxpayer's personal use of his unit be measured against the days when "such unit is

rented at a fair rental.'"[4] Respondent maintains that petitioners' units were not rented at fair rental while petitioners' units were merely held out for rent through the rental pool. On the other hand, petitioners argue that the units were rented at a fair rental to the partnership for the entire year, except those days that the units were used by petitioners for personal use. For the reasons set forth below, we hold for respondent on this issue.

During the years in issue, the Colony was operated by the partnership as a resort hotel. Each purchaser of a condominium unit mandatorily received an interest as a limited partner in the partnership.[5] The partnership agreement required that each limited partner participate in a rental pool whereby his unit was available for daily rental to hotel guests during the entire year. In addition, each limited partner was allowed an aggregate of 30 days' rent-free personal use of his unit, subject to availability and advance reservation. In turn, each limited partner received a distributive share of the profits and losses according to the type of unit owned.

In *Fine v. United States*, 647 F.2d 763, 767 (7th Cir. 1981), the Circuit Court, on similar facts, held that a taxpayer's condominium unit was not rented at a fair rental those days during which it was participating in a rental pool and was available for rent but was not rented to hotel guests.[6] Petitioners attempt to distinguish *Fine* by pointing out that in *Fine*, the taxpayer received a small percentage of the profits while his unit was unoccupied, but available for rent, and a larger percentage of the profits when his unit was actually rented to a hotel guest, whereas petitioners received a fixed percentage of the profits based upon the type of unit. In other words, petitioners will receive the same distributive share regardless

---

[4]Sec. 280A(d)(1) provides:

(1) IN GENERAL.—For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of—
   (A) 14 days, or
   (B) 10 percent of the number of days during such year for which such unit is rented at a fair rental.
For purposes of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes.

[5]The condominium unit and the partnership interest were only transferable in combination.

[6]See *Buchholz v. Commissioner*, T.C. Memo. 1983–378, on appeal (9th Cir., Jan. 23, 1984), which cited with approval *Fine v. United States*, 647 F.2d 763, 767 (7th Cir. 1981).

of whether their units are actually rented or not. Therefore, petitioners conclude their distributive share represented the "fair rental" of the units to the partnership. We disagree.

Petitioners' distributive share of the partnership's profits was determined by the type of unit owned, that is, a one-bedroom unit or a two-bedroom unit. Under the terms of the partnership agreement, all owners of a particular type of unit received the same distributive share of profits and losses, regardless of how often any given unit was rented. Thus the distributive share represented the average profit that the partnership derived from the rental of all of the units of a particular class. It did not reflect the fair rental value of any specific unit or the projected annual rent that a given unit would generate. Consequently, we are unable to conclude, as petitioners do, that all individual units were "rented" to the partnership "at a fair rental." In fact, the partnership was merely managing a rental pool on behalf of all unit owners.

Petitioners' reliance on the fact that participation in the rental pool is mandatory and that the owners' distributive share was unrelated to the frequency of rental to third parties is misplaced. As stated by the Seventh Circuit in *Fine v. United States*:

> The issue before us * * * concerns * * * the rental of one owner's unit. However the owners chose to allocate the joint funds among themselves has no bearing on the requirement in section 280A(d)(1)(B) that a taxpayer's days of personal use of his unit be measured against the days when "such unit is rented at a fair rental." [*Fine v. United States, supra* at 767.]

Thus, those days that petitioners' units were merely held out for rent through participation in the rental pool cannot be considered as rented for fair rental within the meaning of section 280A(d)(1)(B). This conclusion is consistent with the legislative history. Congress, aware of various time-sharing arrangements devised to market vacation homes, stated "The period during which the vacation home is merely held out for rent would not be considered in determining the number of rental days for a taxable year." H. Rept. 94–658 (1975), 1976–3 C.B. (Vol. 2) 695, 858. Accord S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 193.

We think the manner in which petitioners' units were held out for rent and the method chosen by the owners to allocate

the total rental among themselves are irrelevant. The congressional scheme indicates that the units must be rented to third parties at fair rental. Accordingly, we hold that petitioners' units were rented at fair rental only on those days the units were actually rented to hotel guests.

## Issue 3. Complimentary Rooms

We must now determine whether the use of petitioners' units by the partnership as complimentary rooms constitutes personal use to petitioners.

The parties do not dispute that the units were used for personal purposes any day they were being used by petitioners, their relatives, or their friends. Respondent maintains that petitioners' units were also used for personal purposes any day that they were used by the partnership as complimentary rooms. On the other hand, petitioners argue that when their units were used as complimentary rooms they were, under the facts and circumstances, rented at a fair rental. For the reasons set forth below, we do not agree with either petitioners' or respondent's characterization of the use of a unit as a complimentary room.

During the years in issue, the partnership operated the Colony as a resort hotel. In this capacity, it was common practice for the partnership to provide a complimentary room to a person inspecting the resort for the purpose of booking a future convention. To make the best impression upon the prospective customer, the most desirable units, including petitioners', were used as complimentary rooms. This constituted an ordinary and necessary business expense of the partnership in operating the Colony as a resort hotel.

Section 280A(d)(2) provides in pertinent part that:

(2) PERSONAL USE OF UNIT.—For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used—

(A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267(c)(4)) of the taxpayer or such other person;

(B) by any individual who uses the unit under an arrangement which enables the taxpayer to use some other dwelling unit (whether or not a rental is charged for the use of such other unit); or

(C) by any individual * * * unless for such day the dwelling unit is rented for a rental which, under the facts and circumstances, is fair rental.

Respondent interprets this section to include the partnership's use of petitioner's units as complimentary rooms. In other words, whenever the partnership, for business purposes, provides a prospective customer with a complimentary room, it would be deemed to constitute personal use to the taxpayer. We do not agree. We believe that this section should be read, consistent with its legislative history and purpose, to include the use of petitioners' units only when petitioner, for personal purposes, allows an individual to use his units at less than fair rental and not when the units are being used by the partnership for bona fide business purposes.

In its general explanation of section 280A, the Joint Committee stated:

The Act * * * provides a limitation on the amount allowable to a taxpayer for the deductions attributable to the rental of a dwelling unit if the *taxpayer personally uses* the unit in excess of specified periods of time during a taxable year. This new limitation *only applies if the taxpayer's use of the dwelling unit for personal purposes* during his taxable year exceeds * * * [specific limits]. [Emphasis added.]

Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976–3 C.B. (Vol. 2) 1, 156. Accord S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 190; H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 856. The Joint Committee further stated:

The *taxpayer* generally would be deemed to have used a dwelling unit for *personal purposes* for a day if, for any part of the day, *the unit is used for personal purposes* by (1) the taxpayer or any other person who owns an interest in the home; (2) their brothers and sisters, spouses, ancestors, or lineal descendants; (3) any individual who uses the unit under a reciprocal arrangement (whether or not fair rental is charged); or (4) any other individual who uses the dwelling unit during a day unless for that day the unit is rented for a fair rental. [Emphasis added.]

Staff of Joint Comm. on Taxation, *supra*, 1976–3 C.B. (Vol. 2) 1, 157. Accord S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 192; and H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 858.

In the instant case, petitioners' units were used rent free, but they were not used for petitioners' personal purposes; rather they were used for the business purpose of the partner-

ship. Such complimentary use constitutes an ordinary and necessary expense incurred in the trade or business of operating the Colony as a resort hotel. Indeed, petitioners had no control over the use of their units as complimentary rooms by the partnership. The partnership alone exercised full control over occupancy of all the units. Petitioners' only right, with respect to their units, was that they were entitled to occupy each unit for a maximum of 30 days rent free, annually, subject to advance reservations. In fact, if their units were already rented to hotel guests they were required to use another unit. Furthermore, the purpose of section 280A is to provide definitive rules to a taxpayer which specify the extent to which personal use of a vacation home would result in disallowance of certain deductions in excess of gross income. *Fine v. United States*, 647 F.2d 763 (7th Cir. 1981); H. Rept. 94–658, *supra*, 1976–3 C.B. (Vol. 2) at 856; S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 190. If we interpreted section 280A(d)(2)(C) as respondent advocates, petitioners, who have no control over the use of their units by the partnership, might find themselves subject to the limits imposed by section 280A even though their personal use was restricted to less than 14 days to come within the 14-day safeharbor of section 280A(d)(1)(A).

Accordingly, on the facts of this case, we hold that the use of petitioners' units as complimentary rooms by the partnership does not constitute personal use to petitioners. In addition, since no rent was charged when petitioners' units were used as complimentary rooms, we hold that they were not rented at a fair rental for the purposes of section 280A.

## Issue 4. Personal Use Limitation

The final issue for decision is whether petitioners' personal use of their units exceeded the limits imposed by section 280A(d)(1). Section 280A will limit petitioners' deductions if their personal use exceeded 14 days or 10 percent of the number of days that the units were "rented at a fair rental." As we have previously held, their units were only rented at a fair rental those days the units were rented to hotel guests; complimentary use of petitioners' units does not constitute fair rental.

Petitioners have stipulated that each of their units were used for personal purposes for 30 days in 1976, and during 1978, units 642 and 742 were used for personal purposes for 16 days and 22 days, respectively. Therefore, in order to be entitled to deduct the rental expenses associated with their units, petitioners' units must have been rented for at least 300 days during 1976, and in 1978, units 642 and 742 must have been rented for at least 160 days and 220 days, respectively. Petitioners have the burden of proof to show that they are entitled to the deduction. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142, Tax Court Rules of Practice and Procedure.

During the years in issue, the partnership did not maintain daily records showing whether a particular unit was rented, occupied by its owner or another owner rent free, or used as a complimentary room. The only records kept by the partnership were average daily, monthly, and yearly occupancy of the hotel. The average occupancy during 1976 was 45.7 percent, and the average occupancy during 1978 was 54.7 percent. While there was no direct evidence as to the number of days an individual unit was rented, two of petitioners' witnesses, the president and the reservations manager of the partnership, testified that petitioners' units were among the most desirable units at the Colony. The reservations manager stated that petitioners' units were always in demand, and were rented "almost all the time." We found these witnesses to be credible. Under these circumstances, bearing heavily against the taxpayer, we may make our best estimate as to the number of days petitioners' units were rented at a fair rental. *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930).

Based upon the record herein, we find that petitioners' units were not rented for greater than 300 days during 1976; accordingly, for the 1976 taxable year we hold for respondent. *Welch v. Helvering, supra*; Rule 142, Tax Court Rules of Practice and Procedure. However, with respect to the 1978 taxable year, we find that unit 642 was rented for at least 160 days and unit 742 was rented for at least 220 days. Therefore, petitioners may deduct the expenses attributable to rental of their units incurred during 1978.

To reflect the foregoing,

*Decision will be entered under Rule 155.*