**Mehdi RAZAVI and Alexandra L. Razavi,
Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL
REVENUE, Respondent–
Appellee.**

**No. 94–2193.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1995.

Decided Jan. 29, 1996.

J. Timothy Bender (briefed), Joseph P. Alexander (argued), Kadish, Hinkel & Weibel, Cleveland, OH, for Petitioners-Appellants.

Gary R. Allen, Acting Chief (briefed), Thomas J. Clark, Trial Attorney (argued), Kenneth L. Greene, Linda E. Mosakowski, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Respondent-Appellee.

Before: MARTIN and BATCHELDER, Circuit Judges; EDMUNDS, District Judge.*

---

*. The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of | Michigan, sitting by designation.

NANCY G. EDMUNDS, District Judge.

Mehdi and Alexandra Razavi appeal from a decision of the tax court in favor of the Tax Commissioner. Appellants contest the tax court's characterization of their vacation home as a "residence" under I.R.C. § 280A, which limited the amount of deductions Appellants could claim. We reverse the judgment of the tax court.

## I

On December 13, 1985, Appellants Mehdi and Alexandra Razavi bought a vacation condominium in the resort community of South Seas Plantation ("SSP") on Captiva Island, Florida for $355,000. SSP had two rental plans in which Appellants could participate. First, SSP offered a guaranteed lease program, whereby SSP would pay condominium owners $21,000 annual rent and also pay them 40% of the gross rental proceeds in excess of $52,500. Or second, SSP would rent out the condominiums and the owners would receive 50% of the rents collected by SSP with no guaranteed payment. Under both programs, owners could use the condominium for up to four weeks per year at a rate of $10.00 per day. If the owners used the condominiums for more than four weeks, they would have to pay 80% of the going rate. Appellants chose the first option and entered into a 30 month guaranteed lease agreement with South Seas Plantation ("SSP"). The Commissioner does not contest the characterization of this agreement as a lease, and they offer no evidence or legal argument in rebuttal.

During 1987, SSP rented Appellants' condominium to third parties for 200 days and received $48,327.64 gross rental income. As per the lease agreement, SSP gave Appellants $21,000. Appellants personally used the condominium for 27 days.

Appellants deducted the portion of expenses attributable to their condominium on their 1987 Federal Income Tax Returns.[1] The Commissioner of Internal Revenue issued a notice of deficiency to Appellants, disallowing the rental losses deducted by Appellants under I.R.C. § 280A. That section provides that a dwelling is classified as a residence if the taxpayer owner uses the dwelling for more than 14 days or for more than 10% of the days for which the unit is rented at a fair rental. Once property is characterized as a "residence," then a taxpayer may only claim deductions up to the amount of income received from the property. I.R.C. § 280A(c)(5).

Appellants filed a petition with the tax court to contest the Commissioner's determinations. Appellants argued that they had rented the condominium at a fair rental for a full year, less the 27 days which the Appellants personally used the condominium, because of the guaranteed lease agreement with SSP. To support their argument, Appellants presented the testimony of expert John S. Ross, Jr. Mr. Ross compared similar units in the area and found that owners of those units received annual rental income in the amount of $19,919 to $24,976.

The Commissioner argued that Appellants could only count the days on which the condominium was rented by SSP to third parties as days when the unit was rented at a "fair rental." The tax court agreed with the Commissioner stating:

> Assuming arguendo that we were to accept Ross' opinion of the fair market rent of that Unit for 1987, we are still faced with the question whether, as petitioners argue, the fact that they received during that year from SSP an amount equal to that fair market rent necessarily means that SSP rented Unit 1661 from them at a fair rental for 365 days of that year. On the present record, we must answer that question in the negative.

The tax court held that the comparables which formed the basis for Mr. Ross's opinion were occupied only 39–49% of the time, and that therefore the amounts testified to by Mr. Ross were only "fair rental" for the period of actual occupancy. Accordingly, Appellants' deductions were limited to the gross income received from the property pursuant to I.R.C. § 280A. Appellants then filed this appeal.

---

1. The 1986 return was also challenged, but that dispute was resolved.

## II

The parties dispute the proper standard of review to be utilized by this court. The Commissioner contends that the determination of "fair rental value" is a question of fact that may be reversed only if the determination is clearly erroneous. Appellants, on the other hand, argue that the proper standard of review is *de novo* because the issue is a mixed question of law and fact.

The determination of the actual amount received by Appellants for the use of their unit is a question of fact. The determination of whether the Tax Court used the correct standard to measure whether that amount is the "fair rental value" of the unit is a legal issue. *See Amerada Hess Corp. v. Commissioner*, 517 F.2d 75, 82 (3rd Cir.), *cert. denied*, 423 U.S. 1037, 96 S.Ct. 574, 46 L.Ed.2d 412 (1975). The issue to be decided by this court, therefore, is one of mixed law and fact.

Mixed questions of law and fact are reviewed *de novo*. *Blackburn v. Foltz*, 828 F.2d 1177, 1181 (6th Cir.1987), *cert. denied*, 485 U.S. 970, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988). As this court stated in *Board of County Commissioners v. L. Robert Kimball & Assocs.*, 860 F.2d 683, 686 (6th Cir.1988), *cert. denied*, 494 U.S. 1030, 110 S.Ct. 1480, 108 L.Ed.2d 617 (1990), "[w]hen a court reviews an issue under a *de novo* standard of review, the court is determining questions of fact and law as though the reviewing court was the original trial court."

## III

Since the Commissioner has not contested that the agreement between the taxpayer and SSP is a bona fide lease, and since the terms of the lease are not in dispute (the agreement provided for guaranteed monthly payments of $1,750, for thirty months), the only remaining inquiry is whether the annual payment of $21,000 was a fair rental for the year in question.

I.R.C. § 280A(d)(1) provides:

(d) Use as Residence——

(1) In general——For purposes of this section, a taxpayer uses a dwelling unit during the taxable year as a residence if he uses such unit (or portion thereof) for personal purposes for a number of days which exceeds the greater of——

(A) 14 days, or

(B) 10 percent of the number of days during such year for which such unit is rented at a fair rental.

For purposes of subparagraph (B), a unit shall not be treated as rented at a fair rental for any day for which it is used for personal purposes.

(2) Personal use of unit——For purposes of this section, the taxpayer shall be deemed to have used a dwelling unit for personal purposes for a day if, for any part of such day, the unit is used——

(A) for personal purposes by the taxpayer or any other person who has an interest in such unit, or by any member of the family (as defined in section 267(c)(4)) of the taxpayer or such other person.

The term "fair rental" of I.R.C. § 280A(d)(1) is not further defined in the tax code, regulations, legislative history or case law. However, that term is also used in a later amendment to the tax code, I.R.C. § 280A(d)(3). The staff of the Joint Committee on Taxation prepared a report explaining the fair rental standard. That report states:

The Congress intends that fair rental be determined by taking into account such factors as:

(1) comparable rentals in the area.

Staff of the Joint Committee on Taxation, 97th Cong., 1st Sess., *Summary of H.R. 5159: The Black Lung Benefits Revenue Act of 1981* 12 (Comm. Print 1981).

The term "fair rental," like the term "fair market value," reflects the amount at which property would change hands between a willing lessee and a willing lessor, neither being under any compulsion to enter into the transaction and both having reasonable knowledge of the relevant facts. The court must ask whether the taxpayer could have gone into the open market and found a significantly better financial arrangement than the $21,000 annual rental paid by SSP. In evaluating this issue, the court must accept the uncon-

**128**

tested term of the lease as thirty months, adjusted to an annual figure because of the annual tax obligation. It is likely that a daily or weekly rental would be at a higher rate than the proportionate share for the annual rate negotiated by the taxpayers. But nothing in the I.R.C. or the regulations requires a taxpayer to enter into short-term rentals; indeed, such an arrangement might have significant disadvantages and additional expenses for the taxpayer, and require him to assume a risk and responsibility he may not be prepared to accept. Here, the Appellants accepted a guaranteed annual rental which was lower than a gross daily rental for the unit, but without the expenses and risk that such an arrangement required. Given the expert's uncontradicted testimony that comparable units generated $19,919 to $24,976 a year for their owners, the $21,000 received by this taxpayer is well within the range of fair rental for comparable units in the area.

The tax court, relying in part on *Fine v. United States,* 647 F.2d 763 (7th Cir.1981) and *Byers v. Commissioner,* 82 T.C. 919, 1984 WL 15582 (1984), rejected the taxpayers' claim based on the occupancy rate represented by the rentals of comparable units, or the days SSP re-rented the unit to third parties. *Byers* and *Fine,* however, are distinguishable. In *Byers* and *Fine,* the taxpayers were participating in pooling agreements that guaranteed some payment when the units were not rented, but a greater payment when the units were rented. In this case Appellants received from SSP a fixed rent regardless of whether the unit was ever rented to any third parties. Only when SSP would receive rental income in excess of $52,500, an event which has never occurred, could Appellants receive any bonus income. Thus, unlike *Byers* and *Fine,* where the taxpayers retained some of the downside risk of loss, here Appellants shifted all of the risks to the lessee, SSP. Regardless of whether SSP sub-leased the unit to any third parties, Appellants were entitled to payment.

In addition, the taxpayers' claim was rejected in *Byers* because "the distributive share represented the average profit that the partnership derived from the rental of all of the units of a particular class. It did not

reflect the fair rental value of any specific unit or the projected annual rent that a given unit would generate." *Byers,* 82 T.C. at 927. In the instant case, SSP had an individual rental agreement with the taxpayer, based on the amount of income SSP believed it could generate from the specific unit. Therefore, the rate of occupancy of Appellants condominium is irrelevant.

### IV

Accordingly, we **REVERSE** the judgment of the tax court.